## A06A1912. BREWER v. ROYAL INSURANCE COMPANY OF AMERICA.
(641 SE2d 291)

ADAMS, Judge.

Robert Brewer obtained workers' compensation insurance for his business from Royal Insurance Company of America for two years. On his application, he indicated he did not use subcontractors. He paid an estimated premium of $750 the first year and $850 the second, but the policy provided the premium was subject to change following an audit. An audit revealed that Brewer did in fact use

---

[11] *Parks v. Hyundai Motor America*, 258 Ga. App. 876, 877 (1) (575 SE2d 673) (2002).

subcontractors and that his actual earned premium was $65,698 through the date of the audit. The policy was cancelled for premium nonpayment in September 2003, and an additional audit revealed that his earned premium through cancellation was $24,800. After he failed to pay, Royal brought suit, and the trial court granted Royal's motion for summary judgment. Brewer appeals that order.

In order to prevail on summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in a light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

On April 2, 2002, Brewer, doing business as Robert Brewer Paint Contractor, applied for and purchased insurance coverage from Royal through the Norton Agency for an "estimated premium" of $750; this policy ran from May 2002 to May 2003. On his application, Brewer responded that he did not use subcontractors and did not sublet work without requesting certificates of insurance. But Brewer had a history of using subcontractors. He paid them in cash and issued them 1099 tax forms.[1] In fact, he testified that he would subcontract as many of his jobs as possible. Brewer also admitted that he did not ask his subcontractors to provide him with certificates of insurance showing that they had their own workers' compensation coverage. Yet the policy provided that the premium would be based on remuneration paid for the services of all officers, employees, and "all other persons engaged in work that could make us liable under . . . this policy." See *Bossard v. Atlanta Neighborhood Dev. Partnership*, 254 Ga. App. 799, 805 (564 SE2d 31) (2002) ("the general contractor, as the [subcontractor's] employee's 'statutory employer,' is potentially liable for the injured employee's workers' compensation benefits"). The policy explains that "the contract price for their services . . . may be used as the premium basis." Finally, premiums would not be charged "if you give us proof that the employers of these persons lawfully secured their workers' compensation obligations."

Brewer later renewed the policy for a second term, which was to run from May 2003 through May 2004. The total estimated paid premium for this second policy was $850. On July 23, 2003, following the renewal, Brewer received a premium adjustment notice that a policy audit revealed that he did in fact use subcontractors. The audit included a review of Brewer's 2002 tax returns, which revealed his

---

[1] Form 1099 can be used to show payments made to nonemployees/independent contractors of $600 or more in one year. *Ginter v. United States*, 815 FSupp. 1289, 1291 (W.D. Mo. 1993). See also 26 USCA § 6041A; 26 CFR § 1.6041-1.

cost of labor for the period of 2002-2003 to be $405,588. Accordingly, his earned premium for that period was $65,698.[2]

Brewer failed to pay, and on September 27, 2003, his policy was cancelled for that reason. Later, on February 20, 2004, Brewer received a second premium adjustment notice which explained that he owed earned premium of $24,800 for the second policy year through the point of cancellation. Again, Brewer did not pay.

Royal filed suit in the State Court of Gwinnett County alleging that Brewer owed $88,798 principal, accrued interest of $12,962.08, interest on the principal from the date of the filing of suit, court costs, and other relief. Royal sought summary judgment, and Brewer countered with a motion to dismiss Royal's claims. The trial court granted summary judgment to Royal and denied Brewer's motion to dismiss.

On appeal, Brewer contends there are material facts in dispute as to whether a contract was formed; whether Brewer knew and understood its terms; whether Royal made proper demands on Brewer for the earned premiums; and whether Royal waived its claims by renewing the policy. The first two enumerations are essentially the same and therefore will be considered together. The same is true for the third and fourth enumerations.

1. Brewer contends he could not read well enough to understand and comprehend contractual matters and that a representative of the Norton Agency completed all the forms and told Brewer where to sign. As a consequence, he asserts he did not assent to the terms of the contract as required by OCGA § 13-3-2.

Brewer has a tenth grade education; he has experience with contracting and insurance policies; and he has worked in Georgia as a painter for 17 years. By his own admission, Brewer spoke with the agent at Norton, signed the application for insurance, paid the estimated premium, and received a copy of the policy. And the facts show that Brewer can read, at least to some degree: "I can read. I mean, I — but I can't get this paper right here and read it all out to you and I can't write no notes like you're writing. I just have to go on my instinct." Brewer also testified that if he has something important to read, his wife is available to read the contents to him. However, despite having these means available to him, Brewer admitted that he usually does not use them; he just signs documents because he trusts people. For example, he stated that when he buys a car, he does not have his wife read the contract — "I just sign a piece of paper." In

---

[2] The earned premium was calculated at a rate of $18.47 per $100 of remuneration, which comes to $74,912. Certain adjustments not relevant here reduced the total earned premium to $65,698.

this case, Brewer did just that; he signed the application for insurance without reading it or having either his wife or someone from the Norton Agency explain the substance to him.

"[One] who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party who can read must be such as to prevent him from reading." (Citations and punctuation omitted.) *Beckwith v. Peterson*, 227 Ga. 403, 404 (1) (181 SE2d 51) (1971). And even if a person cannot read, he is negligent if he fails to seek help:

> The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person can not read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.

*Intl. Indem. Co. v. Smith*, 178 Ga. App. 4, 5 (342 SE2d 4) (1986), quoting *Southern Auto Co. v. Fletcher*, 66 Ga. App. 168, 170 (17 SE2d 294) (1941).

Because Brewer has not presented any evidence to show that he was induced to sign the agreement by any action or representation amounting to fraud, his argument fails. A contract was formed, and it was Brewer's duty to ensure he understood its contents before signing it.

2. In his third and fourth enumerations, Brewer essentially contends that Royal waived its right to charge the higher premium by renewing the policy for the second term. Specifically, he argues that, assuming $65,698 was due upon expiration of the first policy, why would such an "experienced company then astoundingly" renew the policy.

This argument is not supported by any facts in evidence and accordingly it does not create a basis for this Court to overrule the trial court's grant of Royal's motion for summary judgment. Royal freely admits that it did not conduct the audit until after the initial policy was renewed. However, the terms of the policy provide that Royal could conduct an audit after the expiration of the policy term to determine the actual premium owed, up to three years after the policy period ended:

> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and *within three years after the policy period ends*. Information developed by audit will be used to determine final premium.

(Emphasis supplied.) And Brewer has failed to cite any facts to show that Royal knew that Brewer's earned premium was substantially greater than the estimated premium at renewal.

A waiver of the terms of a contract may be express or implied, or inferred from actions, conduct, or course of dealings. *Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 562 (5) (610 SE2d 92) (2005). When the evidence is in conflict, the issue of waiver must be decided by the jury. *Young v. Oak Leaf Builders*, 277 Ga. App. 274, 277 (1) (626 SE2d 240) (2006).

But the evidence of waiver is not in conflict in this case. The initial premium of $750 was listed as the "total estimated premium," and the policy provides that the balance of the earned premium would be due after an audit:

> The premium shown on the Information Page, schedules, and endorsements is an estimate. The *final premium will be determined after this policy ends by using the actual, not the estimated, premium basis* and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you.

(Emphasis supplied.)

Because the facts indicate that the terms of the contract were clear and waiver did not occur, Brewer is liable to Royal for the full amount.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JANUARY 26, 2007.

*Johnnie C. Wages*, for appellant.

*Savell & Williams, Robert E. Mulholland, William E. Turnip-seed, Edward P. Denker*, for appellee.