A09A2061. JIMENEZ v. GILBANE BUILDING COMPANY et al.
(693 SE2d 126)

ADAMS, Judge.

The issue in this case is whether a plumbing subcontractor is liable as a matter of law for indemnification to the plumbing

---

contractor for whom he worked for the damages arising from a pipe failure. The background facts are that Gilbane Building Company was the general contractor for the construction of a new dormitory at Georgia Southern University. Gilbane hired Gill Plumbing as the plumbing contractor, and Gill Plumbing, in turn, hired Jose Alfredo Jimenez to perform plumbing installation work. The building was completed in July 2005, but in October, after the dormitory was occupied by students, a pipe failed causing extensive water damage to the dormitory and to some students' personal belongings. Gilbane was forced to hire Belfor USA Group, Inc. to perform remediation and repair work. Belfor's $990,060.63 bill for the services has not been paid.

Belfor filed this action against Gilbane, Gilbane filed a third-party action against Gill Plumbing, and Gill Plumbing filed a fourth-party action against Jimenez. The parties have since been realigned. Currently, both Belfor and Gilbane have claims against Gill Plumbing, and Gill Plumbing has a third-party claim against Jimenez for the costs of the remediation and repair.

In its third-party claim, Gill Plumbing asserts that it had a written agreement with Jimenez that included an indemnity agreement, and that the damages to the dormitory resulted from negligent work performed by Jimenez. Jimenez denied that he entered into a valid and enforceable contract or an indemnity agreement with Gill Plumbing and denied the negligence. The trial court granted Gill's motion for partial summary judgment against Jimenez, finding that he was liable "for indemnification to Gill Plumbing" "in the amount, if any, of damages proven to have resulted from Mr. Jimenez's defective work." Jimenez appeals this ruling and contends that "no contract existed between Mr. Jimenez and the Appellee as a matter of law" or, at least, that there are material issues of fact regarding the contract and the indemnity agreement.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. &c. v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

There is no question that the parties had an oral agreement. The issue before us is whether there was an enforceable written agreement and, if so, what were the terms of that agreement. The undisputed facts show that Jimenez was hired by Gill Plumbing to perform plumbing services in the "Eagle Village" construction project at Georgia Southern University, that he performed plumbing services, and that he has been paid for the work in the amount of $167,000.

Jimenez has never worked for any company other than Gill Plumbing and the two have worked together for at least fifteen years. On September 15, 2004, Jimenez signed two documents, which, Gill Plumbing contends, constitute the parties' entire written agreement; Jimenez has signed other documents for Gill Plumbing in the past. The first document is contained on one page, it is dated September 15, 2004, and it has Jimenez's typewritten name and his signature. The main body of the document is as follows:

### LABOR CONTRACT
#### Project: Eagle Village.

| Item 1 | Slab | 50,100.00 |
| Item 2 | Rough | 66,800.00 |
| Item 3 | Set Out | 50,100.00 |

— Weekly billing to be submitted in draw format.
All work must be approved by Larry Pollett.
— Weekly safety meetings must be attended. Sub required to attend all jobsite agenda & safety meetings.
— Subs required to comply with all general contractor regulations & jobsite regulations.
— All Subs required to provide certificate of insurance with adequate coverages per limits set by general contractor.
— Subs are required to honor subcontractor Warranty for labor & installation free of all defects for a period of (1) [sic] year from date of substantial completion.
— *Subs agree & abide by all terms in the attached Exhibit "A" for insurance & indemnity.*

| Total Contract Amount | $ 167,000.00 |

(Emphasis supplied.) Jimenez's signature appears below the following words, which are written on the side of the above chart:

#### Sub-Labor
#### Affidavit

I certify the work for which above payment is requested has been completed according to the plans and specifications and in compliance with the terms of our contract and all labor and material bills applicable to this job have been paid to date and that Federal income, social security, and unemployment taxes have been withheld and will be paid when due on all employees employed by me on this job.

_____ /s/ _____
CONTRACTOR

Notably, this first document does not name Gill Plumbing anywhere, and the "affidavit" is written in the past tense, as if the project had already been completed; but as of the date on the document, Jimenez's work at Eagle Village had not begun. The second document — "Exhibit A" — is two pages long, and it begins as follows:

### INSURANCE AND INDEMNITY SUBCONTRACTOR AGREEMENT

The Work performed by the Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless Contractor, the Owner (if different from Contractor), affiliated companies of Contractor, . . . from and against any and all claims for . . . damage to property . . . which arise or are in any way connected with the Work performed, Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. . . .

The exhibit goes on to require the "Subcontractor" to obtain commercial general liability insurance in the amount of $1,000,000, and to meet other related requirements. The exhibit is signed by Jimenez on the second page over the word "Subcontractor," but it is not dated. Also, the document does not include Gill Plumbing's name anywhere. Finally, Jimenez never performed any work at Eagle Village that could be called "Set Out" as stated on page one of the document.

Jimenez contends the three-page document is not an enforceable agreement because it does not state who the other party is or mention Gill Plumbing's name; it does not include a promise by Gill Plumbing, or anyone else, to pay him; it does not specify the location or address where the work is to be performed; it leaves several terms undefined; it does not specify the time for performance; it does not direct Jimenez to perform any work at all; and although it mentions additional documents, none is attached or defined. He argues the "sub-labor affidavit" found on page one of the document is written in the past tense, suggesting that the work was already completed when, in fact, it had not begun as of the only date indicated on the document. He also complains that the indemnification provision fails to identify who should be indemnified and that it fails to define the terms "subcontractor," "contractor," or "owner." Finally, Jimenez contends he cannot read or communicate well in English and he did not know what he signed.

In Georgia,

> [t]he first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible.

(Citations and punctuation omitted.) *Bagwell-Hughes, Inc. v. McConnell*, 224 Ga. 659, 661-662 (164 SE2d 229) (1968). But "[a]n objection of indefiniteness may be obviated by performance on the part of one party and the acceptance of the performance by the other." (Citations and punctuation omitted.) *Aukerman v. Witmer*, 256 Ga. App. 211, 216 (1) (568 SE2d 123) (2002). Nevertheless, performance as a cure has its limits:

> Performance does not cure the deficiencies in an agreement that is so vague, indefinite, and uncertain "as to make it impossible for courts to determine what, if anything, was agreed upon, therefore rendering it impossible to determine whether there had been performance." [Cit.]

*Razavi v. Shackelford*, 260 Ga. App. 603, 605 (1) (580 SE2d 253) (2003). See, e.g., *Aukerman*, 256 Ga. App. at 216 (1) (parties' performance failed to lend "precision" to the agreement).

Here, the attendant and surrounding circumstances show that Jimenez entered into an agreement with Gill Plumbing, that he performed work, and that he was paid by Gill Plumbing. See OCGA § 13-2-2 (1) ("attendant and surrounding circumstances may be proved"). The three-page document shows that the work was to be performed on the "Eagle Village" project; it stated the amount to be paid for each phase of the work; and the total equaled the amount that Jimenez was paid for the work. And Jimenez attended weekly safety meetings. Thus, there is some evidence of performance consistent with the three-page document. But there is also evidence of performance that is inconsistent with the three-page document. Jimenez did not perform some of the work listed in the document, and the document suggests that the work had already been completed when the document was signed.

In addition, the document is ambiguous at best, and the rules of construction do not resolve the ambiguity. Jimenez is identified as the "subcontractor" in the indemnification agreement, which provides that he is to identify the "contractor" and others. Yet, the first

page of the three-page document identifies Jimenez as the "contractor," suggesting that he should indemnify himself. And there are two contractors who are parties to the lawsuit and other contractors on the entire project. Even if Jimenez entered into a written agreement with Gill Plumbing, Gill Plumbing may have required Jimenez to indemnify some other party. And a review of the rules of construction shows that none resolves the question of who Jimenez promised to indemnify. See OCGA § 13-2-2. This is especially true given that "the words of a contract of indemnification must be construed strictly against the indemnitee." *Service Merchandise Co. v. Hunter Fan Co.*, 274 Ga. App. 290, 292 (617 SE2d 235) (2005).

"The test of an enforceable contract is whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." (Citations, punctuation and footnote omitted.) *Kueffer Crane &c., Inc. v. Passarella*, 247 Ga. App. 327, 330 (3) (543 SE2d 113) (2000). Here, among other problems, it is impossible to tell from the terms of the written document who Jimenez may have promised to indemnify, and that fact has not been made sufficiently clear by either the rules of construction or any performance under the agreement. See, e.g., *Harris v. Baker*, 287 Ga. App. 814, 817 (652 SE2d 867) (2007) (even when read together two documents at issue failed to identify essential terms of the agreement including the parties to the agreement). The trial court erred by granting partial summary judgment in favor of Gill Plumbing on the purported indemnification agreement. Jury issues remain on the terms of the parties' agreement. Our decision resolves both enumerations of error.

*Judgment reversed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 25, 2010.

*Carlock, Copeland & Stair, Tonya F. Stokes*, for appellant.
*Weinstock & Scavo, Marvin P. Pastel II, Kilpatrick Stockton, Keith L. Richardson, Darryl G. Haynes*, for appellees.