A11A0607, A11A0608. GILL PLUMBING COMPANY
v. JIMENEZ; and vice versa.
(714 SE2d 342)

BARNES, Presiding Judge.
This is the second appearance of this contractual indemnity case before this court. See *Jimenez v. Gilbane Bldg. Co.*, 303 Ga. App. 125 (693 SE2d 126) (2010). On remand from the first appeal, a jury trial was held that addressed, among other things, whether and to what extent a plumbing subcontractor was required to indemnify a plumbing contractor for damages resulting from a burst pipe. Using

---

a special verdict form, the jury found that the parties had entered into a valid written contract that included an indemnity agreement and awarded the plumbing contractor damages in the amount of $191,382.01. The trial court entered judgment on the verdict, leading to these companion appeals.

In Case No. A11A0607, the plumbing contractor, Gill Plumbing Company, contends that the trial court erred in refusing to enter a judgment that molded the verdict to correct an alleged illegality and inconsistency in the damages award. In Case No. A11A0608, the plumbing subcontractor, Jose Alfredo Jimenez, contends that the trial court erred in denying his motion for a directed verdict on Gill Plumbing's indemnity claim because the evidence purportedly failed to show that the parties entered into a valid written contract. For the reasons discussed below, we affirm in both appeals.

The record shows that Gilbane Building Company was the general contractor for the construction of a dormitory at Georgia Southern University. Gilbane hired Gill Plumbing as the plumbing contractor. Gill Plumbing then subcontracted with Jimenez to install the pipes in the slab floor and walls of the dormitory.

After the dormitory was completed and occupied by students, a pipe in one of the walls burst, causing water to flood the residential housing units on three levels of the building. The flooding caused extensive structural damage to the units and significant mold growth. Students who had been living at the dormitory were displaced to a nearby hotel for several weeks, and the university deducted the costs associated with housing them from what it owed to Gilbane for the project.

Gilbane hired Belfor USA Group, Inc. to perform the structural repair work and the mold remediation of the dormitory. Belfor completed the repair and remediation of the dormitory and submitted a final bill to Gilbane in the amount of $990,060.63.

When its repair bill was not paid, Belfor sued Gilbane for breach of contract and other claims. Asserting a contractual right of indemnity for damages resulting from the burst pipe, Gilbane brought Gill Plumbing into the case as a third-party defendant. Gill Plumbing ultimately admitted liability under its indemnity agreement with Gilbane, but disputed the amount that it owed. Gilbane assigned its indemnity claim against Gill Plumbing to Belfor, and the parties were realigned. Belfor, on its own behalf and as assignee of Gilbane, then proceeded against Gill Plumbing directly for the costs of the mold remediation, dormitory repairs, and housing of the university students, plus prejudgment interest and attorney fees.

Gill Plumbing brought Jimenez into the case as a fourth-party defendant, alleging that it had a written contract with him that included an indemnity agreement. Its contractual indemnity claim

against Jimenez was based on two documents, both of which were undisputedly signed by him. The first document, entitled "Labor Contract," contained several provisions relating to the dormitory project and made reference to the terms of an "attached Exhibit 'A.'" The second document, entitled "Exhibit A: Insurance and Indemnity Subcontractor Agreement" (the "Indemnity Provision"), provided in relevant part:

> The Work performed by the Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless Contractor, the Owner (if different from Contractor), affiliated companies of Contractor, . . . from and against any and all claims for . . . damage to property . . . which arise or are in any way connected with the Work performed, Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. These indemnity and defense obligations shall apply to any acts or omissions, negligent or willful misconduct of Subcontractor, its employees or agents, whether active or passive. Said indemnity and defense obligations shall further apply, whether or not said claims arise out of the concurrent act, omission, or negligence of the Indemnified Parties, whether active or passive. Subcontractor shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

Gill Plumbing moved for and was granted partial summary judgment on its contractual indemnity claim against Jimenez. The trial court's order granting partial summary judgment to Gill Plumbing was reversed on the first appeal to this court. See *Jimenez*, 303 Ga. App. at 130. We held that a jury had to resolve whether the parties had entered into an enforceable written contract that included an indemnity agreement and, if so, what were the contractual terms. Id. at 129-130.

On remand, the claims of the parties, including Gill Plumbing's contractual indemnity claim against Jimenez, were tried before a jury. There was no dispute that Gill Plumbing and Jimenez had an oral agreement under which Jimenez agreed to install the pipes in the slab floor and walls of the dormitory in return for $167,000. Rather, the primary questions for the jury were whether the parties had agreed to a written contract that included an indemnity agreement, and, if so, whether and to what extent Jimenez was liable to

Gill Plumbing for damages caused by the burst pipe.

At the close of the evidence, Jimenez moved for a directed verdict on the issue of the existence of a written contract that included an indemnity agreement. Jimenez contended that the two documents relied upon by Gill Plumbing, the Labor Contract and the Indemnity Provision, were unenforceable as a written contract because they lacked essential terms and there was no meeting of the minds or mutual assent to the terms of the contract. The trial court took the motion under advisement and allowed the case to go to the jury.

The jury subsequently entered a two-part special verdict. In section one of the special verdict, the jury found that Belfor, for itself and as assignee of Gilbane, was owed a combined total of $864,746.51 in damages from Gill Plumbing as a result of the burst pipe. In section two of the special verdict, the jury found that there was a written contract between Gill Plumbing and Jimenez that included indemnification for the dormitory project; that Gill Plumbing was not solely negligent in causing the damage to the dormitory; and that Jimenez was at fault for causing damage to the dormitory. However, the jury in section two of the special verdict went on to find that Jimenez owed contractual indemnity to Gill Plumbing only in the amount of $191,382.01 for the burst pipe.

Several days after the trial but before a final judgment had been entered, Gill Plumbing filed a letter brief in which it requested that the trial court enter a judgment that molded the verdict to correct an alleged illegality and inconsistency in the damages awarded by the jury. Gill Plumbing argued that once the jury found in section two of the special verdict that a written contract for indemnity existed, that Gill Plumbing was not solely negligent in causing the damage to the dormitory, and that Jimenez was at fault for the damage to the dormitory, then as a matter of law, all damages arising from the burst pipe ($864,746.51), as set forth in section one of the special verdict, should have been awarded to Gill Plumbing under its indemnity agreement with Jimenez. As such, Gill Plumbing argued that the jury's award of only $191,382.01 to Gill Plumbing in section two of the special verdict was contrary to the law and inconsistent with the other findings made by the jury, and, therefore, ought to be disregarded as mere surplusage or stricken as illegal on its face in fashioning the final judgment. In connection with its letter brief, Gill Plumbing submitted a proposed final judgment under which judgment would be entered in favor of Gill Plumbing and against Jimenez in the amount of $864,746.51, rather than in the lower amount awarded by the jury.

The trial court declined to enter a judgment molding the verdict in the manner requested by Gill Plumbing on its contractual indemnity claim. Instead, the trial court entered a final judgment in

favor of Gill Plumbing and against Jimenez in the amount of $191,382.01, consistent with the damages awarded by the jury in the special verdict.[1] These companion appeals followed.

### Case No. A11A0607

1. In several related enumerations of error, Gill Plumbing argues that the trial court erred by failing to enter a judgment that molded the verdict to correct the alleged illegality and inconsistency of the damages awarded by the jury on its contractual indemnity claim. According to Gill Plumbing, the trial court should have disregarded or stricken the damages award of $191,382.01 in section two of the special verdict and instead have entered a final judgment in favor of Gill Plumbing and against Jimenez in the greater amount of $864,746.51. Accordingly, Gill Plumbing requests that the final judgment be set aside and the case remanded with the instruction that the trial court amend the judgment to reflect the greater amount of damages.

The trial court committed no error in declining to enter a judgment molding the verdict in the manner requested by Gill Plumbing in its letter brief. "In a proper case, the superior court may mold the verdict so as to do full justice to the parties in the same manner as a decree in equity." OCGA § 9-12-5.

> [Yet] this "molding" authority is not without limits. . . . [W]hile a verdict in certain circumstances may be reformed or remodeled in the presence of the jury before they have retired from the box, once the jury has dispersed[,] the trial judge has no power either to add to or to take from their findings, and has not the power, by amendment or reformation, to supply substantial omissions or make substantial changes in the verdict as rendered by the jury. Nor can the trial judge accomplish the same result as amending the verdict in matter of substance by entering a decree different from the verdict of the jury, thereby eliminating certain substantial findings of the verdict, and substantially modifying or changing other findings of the jury.

(Citations and punctuation omitted.) *Force v. McGeachy*, 186 Ga. App. 781, 784 (1) (368 SE2d 777) (1988). See *Allstate Ins. Co. v. Durham*, 194 Ga. App. 867, 868-869 (392 SE2d 53) (1990); *Parrish*

---

[1] After entry of the final judgment, Gill Plumbing filed a motion requesting that the trial court amend the judgment in which it raised the same arguments set forth in its prior letter brief. The trial court never ruled on the motion.

*Bakeries of Ga. v. Wiseman Baking Co.*, 104 Ga. App. 573, 575 (122 SE2d 260) (1961). This principle is codified at OCGA § 9-12-7, which provides: "A verdict may be amended in mere matter of form after the jury has dispersed. However, after a verdict has been received and recorded and the jury has dispersed, it may not be amended in matter of substance either by what the jurors say they intended to find or otherwise."

Gill Plumbing requested that the trial court mold the verdict, after the jury had been dispersed, by disregarding or striking the amount of damages awarded in section two of the special verdict ($191,382.01) and then entering a judgment against Jimenez in a greater amount ($864,746.51). But an increase in the amount of damages awarded by the jury clearly is a matter of substance, not mere form. See *French Quarter, Inc. v. Peterson Young Self & Asselin*, 220 Ga. App. 852, 853 (1) (471 SE2d 9) (1996); *Force*, 186 Ga. App. at 783-784 (1). See also *Crawford v. Presbyterian Home, Inc.*, 216 Ga. App. 54, 56 (4) (453 SE2d 480) (1994) (noting that "a verdict may not be amended regarding a matter of substance such as an award of damages"). The trial court thus was without authority to mold the verdict in the way proposed by Gill Plumbing. See *Voxcom v. Boda*, 221 Ga. App. 619, 619-620 (472 SE2d 155) (1996) (trial court erred by modifying the verdict to increase the amount of interest awarded by the jury); *Allstate Ins. Co.*, 194 Ga. App. at 868-869 (trial court lacked authority to modify jury verdict to increase damages from $58,900 to $77,000); *Force*, 186 Ga. App. at 783-784 (1) (trial court improperly amended the jury verdict to increase the damages from zero to $1,500); *Hoffman v. Clendenon*, 150 Ga. App. 98, 99 (1) (256 SE2d 676) (1979) (holding that trial court was without authority to amend the verdict "to increase the amount of damages determined by the jury").[2] It follows that the trial court did not err by declining to follow Gill Plumbing's proposal and instead entering a judgment

---

[2] OCGA § 51-12-12 (a) permits a trial court to interfere with a jury award where "the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." Yet this statutory provision does not authorize a trial court to unilaterally reduce or increase a jury's award of damages. See *Spence v. Hilliard*, 260 Ga. 107, 108 (1) (389 SE2d 753) (1990). Rather, the provision gives a trial court three alternatives when faced with an award of damages that is clearly inadequate or excessive:

> The judge may (1) grant a motion for new trial; (2) grant a motion for new trial as to damages only; or (3) conditionally grant a motion for new trial. The third option gives the trial judge the opportunity to give the litigants the benefit of his or her trial experience and to spare the parties the expense and trouble of a new trial. Under this provision of the statute, the trial judge calculates an appropriate damage award. The parties then have an opportunity to accept the trial court's award and end the case, or reject it and proceed with a new trial. All three statutory options involve granting a motion for new trial.

(Emphasis omitted.) Id. See OCGA § 51-12-12 (b). Here, Gill Plumbing never moved for a new trial on the issue of liability or damages and never requested that the trial court exercise its

consistent with the jury's special verdict.

It is true, as Gill Plumbing asserts, that a trial court may write off or strike a portion of a verdict that is illegal. See *Kimble v. Kimble*, 240 Ga. 100, 101 (2) (239 SE2d 676) (1977); *Dearing & Dearing Enterprises v. A. R. III, Inc.*, 205 Ga. App. 386, 386-387 (1) (422 SE2d 284) (1992). But Gill Plumbing did not ask the trial court merely to write off or strike a portion of the verdict; rather, it asked the court to enter a judgment that increased the amount of damages owed by Jimenez.

Gill Plumbing also relies upon *Roswell Road &c. Liquor Store v. Schurke*, 138 Ga. App. 502 (227 SE2d 282) (1976). In that case, we held that if a jury enters a verdict exonerating a servant of liability but holding the master liable under the doctrine of respondeat superior, the trial court may remove the inconsistency by amending the verdict to find in favor of both defendants. Id. at 503. The present case is distinguishable from *Schurke* because the net effect of the amendment to the verdict requested by Gill Plumbing would be to *increase* the liability of a defendant, namely, Jimenez. And an amendment to the verdict increasing a defendant's liability is not authorized under our case law. See *Voxcom*, 221 Ga. App. at 619-620; *Allstate Ins. Co.*, 194 Ga. App. at 868-869; *Force*, 186 Ga. App. at 783-784 (1); *Hoffman*, 150 Ga. App. at 99 (1).

In conclusion, we note that Gill Plumbing was not without a potential remedy in this case if it believed that the jury's verdict was incorrect. After the return of the verdict but before the dispersal of the jury, Gill Plumbing could have argued to the trial court that the jury's damage award in section two of the special verdict was illegal and internally inconsistent, and then could have requested that the court give the jury additional instructions and permit it to consider the matter again. See *Force*, 186 Ga. App. at 784 (1). Alternatively, after the jury was dispersed, Gill Plumbing could have asked the trial court to grant a new trial on the issue of damages or to conditionally grant a new trial under its power of additur. See OCGA § 51-12-12 (a), (b); *Spence v. Hilliard*, 260 Ga. 107 (1) (389 SE2d 753) (1990); *Parrish Bakeries of Ga.*, 104 Ga. App. at 575. Instead, Gill Plumbing chose to seek entry of a judgment molding the verdict to increase the amount of damages, a method that was procedurally inappropriate. Gill Plumbing thus must be satisfied with the recovery of damages awarded it by the jury.[3]

---

power of additur under OCGA § 51-12-12 to conditionally grant a new trial. Indeed, Gill Plumbing specifically maintains that "[t]his is not a situation where a new trial is necessary on the damage aspect of the indemnity claim."

[3] Asserting that this court must resolve the substantive issue of whether the verdict in this case was internally inconsistent, Gill Plumbing relies upon *Anthony v. Gator Cochran*

## Case No. A11A0608

2. Jimenez cross-appeals from the trial court's judgment, contending that he was entitled to a directed verdict on the issue of whether there was a valid written contract that required him to indemnify Gill Plumbing. He argues that the two documents relied upon by Gill Plumbing to form the written contract, the Labor Contract and the Indemnity Provision, did not name Gill Plumbing as a party, rendering the contract too indefinite to be enforceable. He further argues that the two documents failed for lack of consideration and that there was no mutual assent by the parties to the contractual terms.

(a) As an initial matter, we point out the trial court reserved ruling on Jimenez's motion for a directed verdict, and Jimenez never renewed his motion or otherwise sought to invoke a ruling thereafter. "It is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver." (Punctuation and footnote omitted.) *Pep Boys-Manny, Moe & Jack, Inc. v. Yahyapour*, 279 Ga. App. 674 (2) (632 SE2d 385) (2006). Nevertheless, Jimenez asserts that there was no evidence to support the jury's finding that there was a written contract that included an indemnity agreement, and

> [c]hallenges to the sufficiency of the evidence may be considered on appeal pursuant to OCGA § 5-6-36 (a), which provides that "the entry of judgment on a verdict by the trial court constitutes an adjudication by the trial court as to the sufficiency of the evidence to sustain the verdict, affording a basis for review on appeal without further ruling by the trial court."

(Punctuation and footnote omitted.) Id. Consequently, we will consider the merits of Jimenez's challenge to the evidence despite his failure to invoke a ruling on his motion for a directed verdict. Id.

---

*Constr.*, 288 Ga. 79 (702 SE2d 139) (2010), which held that a party does not waive a claim that a jury verdict is void and that the judgment entered on it must be set aside by failing to object to the special verdict form that was submitted to the jury. That case, however, is clearly distinguishable from the present one. In *Anthony*, the plaintiffs moved for judgment notwithstanding the verdict, or in the alternative, for a new trial, contending that the jury verdict was internally inconsistent and had to be set aside. See *Anthony v. Gator Cochran Constr.*, 299 Ga. App. 126, 127 (682 SE2d 140) (2009). Here, as previously noted, Gill Plumbing never requested that the trial court simply set aside all or part of the verdict; instead, it requested that the trial court enter a judgment substantively molding the verdict to increase the amount of damages owed by Jimenez. As such, the present case is controlled by our precedent addressing the circumstances under which a trial court can mold a jury verdict, rather than cases addressing a request merely to have the verdict stricken or set aside in whole or in part.

(b) Jimenez argues that the Labor Contract and the Indemnity Provision were too indefinite to be enforced because they failed to name Gill Plumbing as a contracting party. We disagree.

While Jimenez is correct that the Labor Contract and the Indemnity Provision do not name Gill Plumbing anywhere on them, "[e]ven when the terms of an agreement are too indefinite to be enforceable, it may later become enforceable by virtue of the subsequent acts, words, or conduct of the parties." (Citation and punctuation omitted.) *Mills v. Barton*, 205 Ga. App. 413, 414 (3) (422 SE2d 269) (1992). The president of Gill Plumbing testified that the Labor Contract and the Indemnity Provision were form contract documents that Gill Plumbing required all of its subcontractors to sign before working on plumbing projects, and that Jimenez had signed the documents at Gill Plumbing's office before starting on the dormitory project. The president further testified that after signing the two documents, Jimenez performed the slab and rough-out work as requested by Gill Plumbing and was paid $167,000 for his work.

Jimenez, who had worked as a subcontractor for Gill Plumbing for over 15 years, confirmed that the Labor Contract and the Indemnity Provision were form documents that Gill Plumbing required him to sign before performing work on any project, and admitted that it was his signature on those documents. He likewise confirmed that Gill Plumbing paid him $167,000 for performing the agreed-upon work on the dormitory project.

Given this testimony, there was evidence from which the jury could identify Gill Plumbing as a party to the Labor Contract and the Indemnity Provision. See *American Global Dev. Group v. Sasser & Weatherford, Inc.*, 249 Ga. App. 479, 482-483 (3) (548 SE2d 465) (2001) (although there was some uncertainty from the language of the contract as to which entities were the contracting parties, there was testimony from which the jury could identify them). Accordingly, the documents were not unenforceable for failure to identify the contracting parties.

Jimenez also points out that the Indemnity Provision refers only to the indemnification of the "Contractor" and the "Owner" without defining those terms. But if the terms of a contract are ambiguous, and the ambiguity cannot be resolved by the rules of contract construction, the ambiguity is a factual matter for resolution by the jury through consideration of parol evidence. See *Livoti v. Aycock*, 263 Ga. App. 897, 902 (2) (590 SE2d 159) (2003). With respect to the Indemnity Provision, Jimenez testified that he understood that if his installation of the pipes in the dormitory was defective, "Gill Plumbing was going to come to [him] and ask [him] to pay for any damages that might occur that they had to pay for." Jimenez's testimony was sufficient for the jury to resolve any ambiguity

concerning which company was to be indemnified under the Indemnity Provision.

(c) Jimenez next argues that the Labor Contract and the Indemnity Provision were unenforceable because there was no consideration for his agreement to the contractual terms. We are unpersuaded.

Although Jimenez contends that the Labor Contract and the Indemnity Provision failed to contain any contractual language requiring Gill Plumbing to pay Jimenez for his work, the Labor Contract on its face provides that the "Total Contract Amount" was $167,000. Moreover, even if a contract fails to set out the consideration owed by one of the contracting parties, the lack of consideration can be cured by performance, rendering the contract binding and enforceable. See *Thomas v. Coastal Indus. Svcs.*, 214 Ga. 832 (1) (108 SE2d 328) (1959). Both the president of Gill Plumbing and Jimenez testified that he was paid $167,000 by Gill Plumbing for performing the subcontractor work on the dormitory project. Thus, any perceived deficiency in the Labor Contract and the Indemnity Provision regarding the consideration that Gill Plumbing was to pay to Jimenez was cured by Gill Plumbing's performance.

Jimenez also asserts that there was a lack of consideration because the Labor Contract and the Indemnity Provision were not signed by him until after he completed his work on the dormitory project, and thus not until after he had already performed his orally agreed-upon contractual obligations. See, e.g., *Glisson v. Global Security Svcs.*, 287 Ga. App. 640, 641-642 (653 SE2d 85) (2007) ("[A] promise to perform a preexisting contractual obligation does not constitute consideration for a new agreement.") (footnote omitted). In support of his assertion, Jimenez points out that some of the language in the Labor Contract was written in the past tense. However, the fact that there was some language in the past tense, suggesting that the subcontracting work had already been completed, simply created an ambiguity for the jury to resolve through parol evidence. See *RLI Ins. Co. v. Highlands on Ponce*, 280 Ga. App. 798, 802-803 (1) (635 SE2d 168) (2006) (where terms of contract were in conflict with one another, jury had to resolve the intent of the contracting parties). And the president of Gill Plumbing testified that Jimenez signed the contract documents before he began work on the dormitory project. Hence, there was testimony upon which the jury could resolve the ambiguity caused by the use of the past and present tenses in the contractual documents in favor of finding that the Labor Contract and the Indemnity Provision were executed before the commencement of any work on the dormitory project.

(d) Lastly, Jimenez argues that there was a lack of mutual assent to the terms of the Labor Contract and the Indemnity Provision

because he could not read or communicate well in English and did not understand what he had signed. His argument is without merit.

"One signing a document has a duty to read it and is bound by the terms of a document he does not read." (Citation and punctuation omitted.) *Pioneer Concrete Pumping Svc. v. T&B Scottdale Contractors*, 218 Ga. App. 596 (1) (462 SE2d 627) (1995). This is true even if the signer cannot read, because in that circumstance the signer has a duty "to procure some reliable person to read and explain it to him." (Citations omitted.) *Brewer v. Royal Ins. Co. of America*, 283 Ga. App. 312, 315 (1) (641 SE2d 291) (2007). To the extent that Jimenez maintained that he had a confidential relationship with Gill Plumbing that relieved him of his duty to read the documents, see *Cochran v. Murrah*, 235 Ga. 304, 305 (219 SE2d 421) (1975), the jury was entitled to find that no such relationship existed in this case.

> [T]he mere fact that two persons have transacted business in the past . . . and that they have come to repose trust and confidence in each other as the result of such dealings is not sufficient, in and of itself, to warrant a finding that a confidential relationship exists between them[.] . . . In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.

(Citations and punctuation omitted.) *Kienel v. Lanier*, 190 Ga. App. 201, 203 (2) (378 SE2d 359) (1989).

For these combined reasons, we conclude that the issue of whether the parties entered into a written contract that included an indemnity agreement was properly submitted to the jury for resolution. Therefore, the trial court committed no error in denying Jimenez's motion for a directed verdict on Gill Plumbing's contractual indemnity claim.

*Judgments affirmed. Adams and Blackwell, JJ., concur.*

DECIDED JUNE 16, 2011 —
RECONSIDERATION DENIED JULY 14, 2011 — ▮▮▮▮▮▮

*Drew, Eckl & Farnham, Stevan A. Miller, Lisa R. Richardson*, for appellant.

*Carlock, Copeland & Stair, Wayne D. McGrew III, Tonya F.*

*Stokes, Kilpatrick, Townsend & Stockton, Keith L. Richardson, Weinstock & Scavo, Marvin P. Pastel II, Michael S. Love*, for appellee.