**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0412. PRIMARY INVESTMENTS, LLC f/k/a PRIMARY PREP ACADEMY, LLC et al. v. WEE TENDER CARE III, INC. et al.

MCMILLIAN, Judge.

This appeal arises from the multi-million dollar sale of Primary Prep Academy, a childcare facility, and subsequent attempts by the members of the seller, a limited liability company, to open another daycare center, allegedly in violation of the noncompetition clause in the sale contract. N & N Holdings, LLC ("N & N Holdings"), the purchaser of the facility, and Wee Tender Care III, Inc. ("Wee Tender Care"), the entity that is currently operating the Primary Prep Academy (collectively "Plaintiffs"), brought suit against the seller, Primary Investments, LLC, formerly known as Primary Prep Academy, LLC ( "Primary, LLC"); Marguerite O'Brien, Kelli O'Brien Milz, and Erin O'Brien Fleishman (collectively the "O'Briens"), who are

mother and daughters and who were members and managers of Primary, LLC; and the O'Briens' new childcare company, East Cobb Children's Academy, LLC ("East Cobb") (collectively "Defendants"). Plaintiffs filed this action for damages and equitable relief, and Defendants answered and filed their own counterclaims. Defendants appeal the trial court's grant of partial summary judgment to Plaintiffs on their own claim for breach of contract and on Defendants' counterclaim for rescission. For the reasons that follow, we reverse the entry of the judgment finding Defendants liable for violation of the noncompetition clause in the parties' contract, but we affirm the entry of judgment in favor of Plaintiffs on Defendants' counterclaim seeking rescission (of the sale contract) based on fraud or mistake.

Viewing the evidence in the light most favorable to the nonmoving parties,[1] in 2008, Martin G. Nixon and Stephenie L. Nixon (the "Nixons") approached the O'Briens expressing an interest in purchasing Primary, LLC. After negotiations and multiple contract drafts, an asset purchase agreement ("APA") was executed on March 20, 2008 between Primary, LLC, as seller, and N & N Holdings, LLC, as

---

[1] We review the grant of summary judgment under a de novo standard of review and construe the evidence in the light most favorable to the nonmoving parties, in this case, the Defendants. See *Thornton v. Georgia Farm &c. Ins. Co.*, 297 Ga. App. 132 (676 SE2d 814) (2009).

buyer, for the sale and purchase of the assets of the childcare business. Marguerite O'Brien executed the APA on behalf of the Seller and the Nixons each executed on behalf of N & N Holdings, LLC.[2] The noncompetition clause of the APA provides that:

> Until three years after the Closing Date (the "Noncompetition Period"), Seller agrees that neither Seller nor *its agents* will, unless acting in accordance with Buyer's prior written consent, (i) solicit any person employed by Seller as of the Closing Date who is employed by Buyer at the Business location (ii) directly contact any parent who, within a one-year period prior to the Closing has had a child enrolled at the Business Locations, for the purpose of soliciting or selling products or services to said parent in competition with Buyer, or (iii) open any child care facility within a ten-mile radius of any Business Locations being sold to the Buyer hereunder.

(Emphasis supplied.)

After the transaction closed, Primary Prep Academy continued to function under the same name and at the same location, but was operated by Wee Tender Care, a corporation created by the Nixons. In January 2010, the O'Briens decided to open

---

[2] We note that the signature page states that the Nixons were executing the contract on behalf of "N & N, LLC" but the parties do not contend that this discrepancy affects the validity of the APA.

a new childcare facility and formed East Cobb, a new Georgia limited liability company through which to conduct the business. East Cobb opened its new childcare facility, which was located within a ten-mile radius of Primary Prep Academy, in September 2010. Plaintiffs subsequently filed suit seeking, inter alia, to enforce the APA's noncompetition clause.

1. We turn first to the issue of whether the noncompetition clause in the APA bars Defendants from opening the childcare facility.[3] "The construction of a contract is a question of law for the court." OCGA § 13-2-1. See also *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999).

> This Court construes contracts so as to give them the meaning which will best carry out the intent of the parties. In doing this[,] we must look at the instrument as a whole and consider it in the light of all the surrounding circumstances. Thus, the favored construction will be that which gives meaning and effect to all the terms of the contract over that which nullifies and renders meaningless a part of the document.

---

[3] Defendants also raise the issue of whether Plaintiffs have standing to enforce the noncompetition clause. We find it unnecessary to address the issue of standing given our holding in this division. In any event, both the buyer under the APA, N & N Holdings, and the purported assignee of N & N Holdings's rights under the APA, Wee Tender Care, have asserted these claims.

(Citations omitted.) *Schafer Properties v. Tara State Bank*, 220 Ga. App. 378, 381 (2) (469 SE2d 743) (1996). If the trial court determines that the language is clear and unambiguous, "the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." *Schwartz*, 237 Ga. App. at 660 (2).

In this case, the noncompetition clause provides that the "Seller agrees that neither Seller nor its agents" will commit certain acts in competition with N & N Holdings, as the buyer. The parties do not contend, and no evidence in the record indicates, that the entity Primary, LLC was involved in opening the East Cobb childcare facility. Nor is there any evidence that the O'Briens were acting as agents for, or for any purpose related to the business and affairs of, Primary, LLC when they opened the new facility. Accordingly, Plaintiffs failed to establish any violation of the noncompetition clause by Primary, LLC. The key issue, therefore, is whether the language "neither Seller nor its agents" in the noncompetition clause barred the O'Briens, individually, from opening the East Cobb childcare facility.

It is undisputed, however, that Milz and Fleishman never signed the APA. And although Marguerite O'Brien signed the agreement, she did so only in a representative capacity. Under OCGA § 10-6-53, "if the principal's name is disclosed and the agent professes to act for him, it will be held to be the act of the principal."

5

Consequently, Marguerite O'Brien's signature formed a contract between Primary, LLC and N & N Holdings.[4] And "[a]n agent who, acting within the scope of his authority, enters into contractual relations for a disclosed principal does not bind himself, in the absence of an express agreement to do so." (Citation and punctuation omitted.) *Villanueva v. First American Title Ins. Co.*, 313 Ga. App. 164, 166 (1) (721 SE2d 150) (2011). Because no such agreement appears here – the O'Briens are not even mentioned by name in the APA – the O'Briens are not parties to the APA, and "[i]t is axiomatic that a person who is not a party to a contract is not bound by its terms." *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 437 (629 SE2d 22) (2006). See also *Accurate Printers, Inc. v. Stark*, 295 Ga. App. 172, 178 (3) (a) (671 SE2d 228) (2008).

Nevertheless, Plaintiffs contend that the APA's use of the words "its agents" is unambiguous and refers specifically to the O'Briens. They assert that the Georgia Limited Liability Company Act (the "Act") defines "agent" as any manager of the limited liability company, and therefore, the term "its agents" includes the O'Briens individually. Thus, Plaintiffs argue that Primary, LLC's execution of the contract

---

[4] Moreover, we note that the APA states that the agreement was "made and entered into . . . by and between ('Seller') Primary Prep Academy LLC . . . and N & N Holdings, LLC . . . ('Buyer')" without reference to the O'Briens individually.

containing this language was somehow sufficient to bind the O'Briens individually to the terms of the noncompetition clause.

Plaintiffs are correct that OCGA § 14-11-301 (b) (2) of the Act provides that "[i]f the articles of organization provide that management of the limited liability company is vested in a manager or managers: . . . (2) Every manager is an agent of the limited liability company for the purpose of its business and affairs . . . ." However, this statute is merely a restatement of the general principle that an agent is one who acts for another, but nothing in the language of the Act or elsewhere under Georgia law permits a principal, in this case the limited liability company, under these circumstances, to bind its agents for the limited liability company's contractual obligations. To the contrary, the O'Briens, as members and agents of Primary, LLC, are afforded protection from liability for Primary, LLC's obligations. Under the Act, "[a] person who is a member, manager, agent, or employee of a limited liability company is not liable, . . . for a debt, obligation, or liability of the limited liability company, including liabilities and obligations of the limited liability company to any member or assignee, whether arising in contract, tort, or otherwise[.]" OCGA § 14-11-303 (a). See also *Green v. Flanagan*, 317 Ga. App. 152 (730 SE2d 161) (2012); *Winzer v. EHCA Dunwoody*, 277 Ga. App. 710, 713 (627 SE2d 426) (2006). Thus,

7

"a member of a limited liability company . . . is considered separate from the company and is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company . . . ." (Citations omitted.) *Milk v. Total Pay & HR Solutions, Inc.*, 280 Ga. App. 449, 451-452 (634 SE2d 208) (2006) (holding that member of limited liability company not liable for company's debts arising out of contract not signed by member in his individual capacity).[5] Cf. *Sun Nurseries, Inc. v. Lake Erma, LLC*, 316 Ga. App. 832, 838 (1) (a) (730 SE2d 556) (2012) ("[A]n LLC member may be held individually liable only if he or she personally participates or cooperates in a tort committed by the LLC or directs it to be done.") (citation and punctuation omitted). Accordingly, Primary, LLC had no authority to bind the O'Briens individually to the terms of the noncompetition clause, and we find that under the Act, merely including the term "its agents" in a contract signed by a limited liability company does not bind its members or managers

_____

[5] We note that Plaintiffs do not argue on appeal, and we find no evidence supporting the proposition, that the existence of the limited liability company should be ignored in this case. "Georgia still recognizes corporate identity as separate from that of its principals or owners, so long as the corporate forms are maintained." *Yukon Partners, Inc. v. The Lodge Keeper Group, Inc.*, 258 Ga. App. 1, 5 (572 SE2d 647) (2002). The same recognition applies to a limited liability corporation and its members, and courts must exercise "great caution" in disregarding this legal distinction. Id.; *Milk*, 280 Ga. App. at 451.

individually. Rather, if N & N Holdings and the Nixons wished to bind the O'Briens to the terms of the noncompetition clause, they were required to make them parties to the APA and to obtain their signatures in their individual capacities.[6]

Additionally, we reject the proposition argued by Plaintiffs and adopted by the trial court that two letters mailed by the parties to a state regulator had the effect of altering the APA so as to make the O'Briens parties to the contract and subject to the noncompetition clause. One of the letters is signed by the Nixons and the second is signed by the O'Briens, and both asked the state regulator to transfer ownership from Primary Prep Academy to Wee Tender Care. But these letters were sent in compliance with the APA's requirement that the parties cooperate and take all actions necessary to obtain state approval of the sale and transfer of the license for the childcare center, and the buyers were permitted to cancel their commitment under the APA should efforts for the transfer fail. However, we find nothing in the letters or the APA to suggest or to anticipate that these letters were intended to become incorporated into

---

[6] Because the law of contracts and agency is incorporated into the APA, the only construction of the noncompetition clause consistent with these concepts is to prohibit Primary, LLC or agents acting on its behalf from opening a competing childcare facility. See *Magnetic Resonance Plus, Inc. v. Imaging Systems International*, 273 Ga. 525, 527 (2) (543 SE2d 32) (2001) (laws in existence at time contract is executed are part of contract); *Ready Trucking, Inc. v. BP Exploration & Oil Company*, 248 Ga. App. 701, 702 (2) (548 SE2d 420) (2001) (same).

9

the APA, or that the parties intended for the O'Briens to become parties to the APA merely by signing the letters. As no authority for this proposition is cited by the Plaintiffs or the trial court, and as we are unaware of any theory that would authorize such a result, we find this contention to be without merit.

Therefore, because Plaintiffs failed to show that Primary, LLC, the only defendant who was a party to the APA, violated the noncompetition clause and also failed to show that the O'Briens, who were not parties to the APA, were subject to the its terms, the trial court erred in granting partial summary judgment against Defendants on the liability issue.

2. We now turn to the trial court's grant of summary judgment against Defendants on their counterclaims for rescission and equitable reformation of the APA based on fraud and mutual mistake with regard to the noncompetition clause.

The first draft of the APA set the radius of the noncompetition zone at five miles. The second draft contained a number of changes, including increasing the purchase price by over $200,000 as well as the earnest money to be deposited, and setting the radius of the noncompetition zone to ten miles. Although the Nixons initialed each page of this draft, and, in fact, their initials appear directly adjacent to the language increasing the radius to ten miles, this change apparently was not

highlighted as were other alterations to the draft. And the final, executed draft of the APA also included the ten-mile noncompetition zone.

Defendants contend that the change to the ten-mile radius constituted fraud on the part of the Nixons and N & N Holdings. But we find that this counterclaim is barred because Marguerite O'Brien, who was negotiating the transaction on behalf of Primary, LLC, had ample and repeated opportunity to read the draft and discover the change, but did not. See *Megel v. Donaldson*, 288 Ga. App. 510, 514 (2) (654 SE2d 656) (2007) ("One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract."). "A contract was formed, and it was [O'Brien's] duty to ensure [she] understood its contents before signing it." *Brewer v. Royal Ins. Co. of America*, 283 Ga. App. 312, 315 (1) (641 SE2d 291) (2007).

Alternatively, Defendants maintain that the counterclaim is predicated on mutual mistake, and under that theory, the failure to read the contract is not fatal, thus raising a genuine issue of material fact for the jury. However, we find that the cases relied upon by Defendants are inapposite. In both *Fox v. Washburn*, 264 Ga. 617 (1) (449 SE2d 513) (1994) and *Hall v. Hall*, 303 Ga. App. 434, 435-436 (1) (693 SE2d

624) (2010), real property was conveyed by deeds that failed to include the provisions of oral agreements reserving life estates in the grantors. In both cases, the appellate court found that material questions of fact remained regarding whether the terms of the deeds were contrary to the parties' agreements. Here, in contrast, Marguerite O'Brien, who negotiated the APA on behalf of Defendants, conceded that there was no discussion about the noncompetition clause prior to her receipt of the first draft of the APA from Nixon or thereafter. And Defendants have pointed to no other evidence, and we have found none, regarding any specific negotiation or express agreement between the parties as to the noncompetition radius.[7] Accordingly, any mistake in failing to recognize the change in the subsequent drafts was unilateral on the part of Primary, LLC, and the evidence does not demonstrate any mutual mistake of fact or law.

Since Defendants showed no basis for rescission, the trial court did not err in granting partial summary judgment in favor of Plaintiffs on Defendants' counterclaim based on fraud or mistake.

---

[7] We note however, that the first draft of the APA indicates that the agreement would be governed by the laws of the State of Texas , suggesting that the parties, who apparently negotiated and drafted the agreement themselves, perhaps, relied upon a prior agreement as a form for drafting the APA.

3. In view of our construction of the noncompetition clause in Division 1, the remaining issues submitted in Defendants' enumerations of error, including whether Plaintiffs purchased the goodwill of the O'Briens, the reasonableness of the noncompetition clause, the admissibility of certain expert evidence, and the date when the noncompetition clause expired, will not affect any proceedings below. Therefore, these issues are moot and will not be addressed in this appeal.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Dillard, J., concur.*