## A06A0633, A06A0634. McDONALD CONSTRUCTION COMPANY, INC. v. BITUMINOUS CASUALTY CORPORATION et al.; and vice versa.

(632 SE2d 420)

ELLINGTON, Judge.

In Case No. A06A0633, McDonald Construction Company, Inc. ("McDonald") appeals from the grant of partial summary judgment to its insurer, Bituminous Insurance Companies ("Bituminous") in this contract dispute involving a Commercial General Liability ("CGL") policy. McDonald contends the trial court erred in finding, as a matter of law, that portions of its claim were not covered under the CGL policy. In a cross-appeal, Case No. A06A0634, Bituminous contends the trial court erroneously denied summary judgment on McDonald's remaining claims, arguing that those claims also were not covered under the CGL policy. For the following reasons, we find that Bituminous was entitled to summary judgment on McDonald's entire claim. Therefore, we affirm the trial court's judgment in part and reverse in part.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable conclusions and inferences in favor of the nonmovant." (Footnotes omitted.) *SawHorse, Inc. v. Southern Guaranty Ins. Co. &c.*, 269 Ga. App. 493 (604 SE2d 541) (2004).

In its order granting partial summary judgment to Bituminous, the trial court included a recitation of the relevant evidence based upon the undisputed evidence in the record. We adopt it here, as follows:

> In 1998[,] McDonald Construction Company entered into a contract to renovate and remodel Jennings Homes, a housing project owned by the Augusta Housing Authority. The project involved the remodeling and renovating of 26 buildings consisting of 150 separate apartment units. McDonald began its work on the project in 1998, and subcontracted the application of vinyl composition tile flooring ("VCT") to Co-Defendant Augusta Tile Crafters, Inc. As part of the remodel job, McDonald purchased, and its employees installed, plywood underlayment on the second floor of the various apartment buildings. Augusta Tile performed its work on the site from 1999 through 2001. The Bituminous Defendants issued various [CGL] policies to McDonald, each covering one-year periods effective January 10, 1999, January 10, 2000, and January 10, 2001, respectively.

Some time shortly after Augusta Tile began its subcontracted work on the project in 1999, a few individual VCT tiles delaminated, or came unstuck, from their plywood underlayment on the second floor of certain of the apartments. It is undisputed there were no problems with any of the tile applied on the first floor. Individual tiles sporadically delaminated throughout the rest of the project. When the tiles came unstuck[,] they were repaired.

By February 2001, McDonald had completed the final punchlist requirements and the Housing Authority had occupied all the buildings. After McDonald completed its work, the architect discovered that most of the second floor tiles had delaminated, prompting the architect to issue an order of condemnation with respect to the tile.

The record also shows that, in his February 5, 2001 condemnation letter, the architect stated that the delaminated tiles failed to comply with contract specifications and instructed McDonald to correct the problem. McDonald hired experts to determine the cause of the delamination, but the experts disagreed as to the cause of the problem. Several months later, on September 21, 2001, the Housing Authority sent a letter to McDonald demanding that it immediately repair the delaminated tiles. According to McDonald, the Housing Authority refused to accept the project "as it was" because the tile flooring was not satisfactory or in accordance with the contract. Although the Housing Authority expressed concern that the loose tiles created a hazard that could cause an injury if they were not repaired promptly, there is no evidence of any injury which resulted from the delaminated tiles. Further, there is no evidence in the record of any damage to the building or other property caused by the delaminated tiles or that the Housing Authority ever asked McDonald to pay for any property damage. The Housing Authority withheld $150,000 under the construction contract, to be paid when McDonald completed the necessary repairs to the floors. McDonald then hired a different subcontractor to install replacement tiles. Before the subcontractor installed the tiles, McDonald's employees moved furniture from the second-story apartments and removed the old tiles. After the replacement tiles were installed, McDonald's employees moved the furniture back into the apartments. McDonald paid the subcontractor $91,745 for replacing the tiles. McDonald also estimated that it had incurred approximately $14,000 in labor costs for moving the furniture and preparing the floors for the new tiles. Once the repairs were complete, the Housing Authority paid McDonald the funds that had been withheld.

On December 7, 2001, McDonald sent a claim letter to Bituminous asking for $154,655.80 under its CGL policy. This amount included the following expenses: the costs of labor to move the furniture and remove the delaminated tiles, the subcontractor fees to install the replacement tiles, equipment rental, and material and supplies. McDonald also demanded reimbursement for the costs of testing to determine the cause of the delamination, lost overhead and profit, attorney fees, gas and travel costs, and the costs of lodging for trips to Augusta.[1] McDonald did not assert a claim for any liability it had incurred for injuries to a third party or to damage to property belonging to the Housing Authority or a third party. Instead, McDonald repeatedly acknowledged that its claim under the CGL policy for the costs it incurred to replace the tiles arose from its legal obligation under the construction contract to properly install the tiles, not from any tort liability.

After Bituminous denied the claim, McDonald sued Bituminous for breach of contract. Bituminous answered and asserted a counterclaim for declaratory judgment on its obligations to McDonald under the CGL policy. Following a hearing on both parties' motions for summary judgment, the trial court found that McDonald incurred the costs of replacing the delaminated tiles due to its contractual obligations to the Housing Authority, and not due to any tort claim arising from the loose tiles. The court found that the costs to replace the tile were part of the "risk borne by the contractor to make the building project conform to the agreed contractual requirements." Based upon these findings,[2] the court granted Bituminous partial summary judgment on McDonald's claim for the cost of the subcontractor who replaced the tile. The court also found, however, that the other costs incurred by McDonald, such as the cost of moving the furniture, might be considered "damage to other property" under the contract. Therefore, the court denied summary judgment to Bituminous on the remaining portions of McDonald's claim. Both McDonald and Bituminous appeal from the court's order.

> Determination of the issues herein requires us to construe the provisions of the subject insurance policy under the facts of record. Issues of construction of an insurance policy and the rights and obligations of the parties thereunder may

---

[1] With the exception of a September 2001 contract for the subcontractor's installation of the replacement tile, the record does not include any documentation to support the amounts demanded in the December 7, 2001 letter.

[2] In addition to this conclusion, the court also found that portions of McDonald's claim were not covered under various exclusions to the contract. McDonald's claims of error as to these findings are addressed in Division 4, infra.

involve mixed questions of law and fact. However, when the trial court merely construes and interprets a contract where the material facts are undisputed, an appellate court owes no particular deference to such legal conclusions, and the review is de novo.

(Citations, punctuation and footnotes omitted.) *Ga. Farm &c. Ins. Co. v. Hall County*, 262 Ga. App. 810, 812 (586 SE2d 715) (2003). In this case, the relevant facts underlying McDonald's insurance claim are not in dispute; the only question is whether the CGL policy covers such claim. Accordingly, our review is de novo.

Under the CGL policy in this case, Bituminous, as the insurer, agreed to pay "those sums that [McDonald, as the insured,] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that is caused by an "occurrence."[3] An "occurrence" is defined as an "accident, including repeated or continuous exposure to substantially the same general harmful conditions."[4] The policy, however, specifically excludes "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."[5] The policy also excludes damage to the insured's completed work, which is defined as work or operations performed by the insured or on its behalf, and materials, parts, or equipment furnished in connection with such work or operations.[6] This exclusion does not apply, however, "if the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor."[7] Finally, the policy excludes "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," although this exclusion does not apply to property damage arising out of the insured's product or its completed work.[8]

## Case No. A06A0633

1. McDonald contends the trial court erred in finding that the delamination of the tiles was not an "occurrence" that was covered under the policy. It argues that the policy defines an "occurrence" as an "accident," and that an "accident" is "an event that takes place

---

[3] Sections I.1.a.; I.1.b.(1).

[4] Section I.14.

[5] Section I.2.b.

[6] Sections I.2.1. ("Damage to Your Work"); V.21. (definition of "Your Work").

[7] Section I.2.1.

[8] Sections I.2.j.(6); V.16.a.(2) (defining "products-completed operations hazard").

without foresight, expectation, or design." McDonald argues, therefore, that the delamination was an "occurrence" under the policy because McDonald did not intend for the original subcontractor to do "shoddy work" when installing the tiles. This contention misses the point. Pretermitting whether the delamination constituted an "occurrence" under the policy, the threshold consideration is whether McDonald incurred the amount it is claiming under the policy after it had become "legally obligated to pay as damages" sums resulting from either "bodily injury" or "property damage" for which the policy provided coverage.

"[T]he purpose of . . . comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product." (Citation and punctuation omitted.) *Elrod's Custom Drapery Workshop v. Cincinnati Ins. Co.*, 187 Ga. App. 670 (371 SE2d 144) (1988) (physical precedent only), citing *Gary L. Shaw Builders, Inc. v. State Auto. Mut. Ins. Co.*, 182 Ga. App. 220, 223 (2) (355 SE2d 130) (1987).

> While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting. . . . The coverage applicable under the CGL policy is for tort liability for injury to persons and damage to other property and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

(Citations and punctuation omitted.) *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. 508, 511-512 (3) (417 SE2d 197) (1992) (insured contractor negligently built part of a golf course on the wrong property, damaging that property; the insured's CGL policy did not cover the insured's contractual liability for economic losses due to its breach of the construction contract, but the policy did cover tort damages which arose outside of the contract when the insured was sued for negligently damaging the other property).

Stated another way, CGL coverage is intended to cover the "potentially limitless liability" associated with the risk that "the work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the completed work itself, and for which the insured may be found liable." (Punctuation and footnote omitted.) *SawHorse, Inc. v. Southern Guaranty Ins. Co. &c.*, 269 Ga. App. at 495-496 (1). For there to be coverage under a CGL

policy for faulty workmanship, there would have to be damage to property other than the work itself and the insured's liability for such damage would have to arise from negligence, not breach of contract. *Custom Planning & Dev. v. American Nat. Fire Ins. Co.*, 270 Ga. App. 8, 11 (2) (606 SE2d 39) (2004).

In this case, it is undisputed that the delaminated tiles failed to conform to McDonald's contract with the Housing Authority and that the Housing Authority refused to accept the project as complete until the tiles were repaired. McDonald has repeatedly acknowledged that it repaired the tiles pursuant to its obligation under the contract to properly install the floors in the apartments. Further, there is no evidence in the record of any damage to property belonging to the Housing Authority or to any third party or of any personal injuries which resulted from the delamination or replacement of the tile, nor is there any evidence that the Housing Authority or any third party asserted a tort claim against McDonald for such damages.

It follows that all of the costs McDonald allegedly incurred while replacing the tiles arose under its construction contract with the Housing Authority, not from any tort liability that arose outside of the construction contract. Accordingly, even if the delamination of the tile was an "accident," as McDonald contends, there is no evidence that McDonald's insurance claim arose from an obligation to pay damages for "bodily injury" or "property damage" resulting from such an "accident." *Custom Planning & Dev. v. American Nat. Fire Ins. Co.*, 270 Ga. App. at 11 (2); *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. at 508-509.[9]

Therefore, the trial court properly found that McDonald's claim was not covered by the CGL policy, and the court did not err in granting summary judgment to Bituminous on McDonald's claim for the cost of hiring a subcontractor to replace the tiles. As shown in Division 5, infra, however, Bituminous was also entitled to summary judgment on McDonald's remaining claims.

2. McDonald also argues that, even if the delaminated tiles did not actually cause any personal injury or property damage, the tiles *could* have caused such damages if it had not repaired them. McDonald contends that, because the company was exposed to "potential" tort liability, the CGL policy should cover the expenses for replacing the tiles. McDonald has failed to cite to any authority,

---

[9] See also *Wilson v. Southern Gen. Ins. Co.*, 180 Ga. App. 589, 590-591 (349 SE2d 544) (1986) (construing the phrase "all sums which the insured shall become legally obligated to pay as damages" in a motorcycle insurance policy as referring to damages that would result if the insured injured another person or other property while driving his motorcycle, and not damages that resulted from the insured's contractual liability for his own medical expenses arising from injuries he received while riding his motorcycle) (punctuation omitted).

however, which supports its contention that the CGL policy at issue covers McDonald's costs of complying with a known, pre-existing contractual obligation which, if not addressed, might potentially expose the company to tort liability sometime in the future.[10] Accordingly, this argument lacks merit. See also Court of Appeals Rule 25 (c) (2) (an enumeration of error which is not supported by citation to authority may be deemed abandoned).

3. McDonald also argues that its original subcontractor negligently installed the tiles, the subsequent delamination damaged the tiles themselves, and this "property damage" was covered by the policy. McDonald relies on Section I.2.1. of the policy, which excludes coverage for damage to the insured's completed "work" unless such work was performed by a subcontractor.[11] As discussed in Division 1, supra, however, McDonald was not legally obligated to pay damages for the allegedly negligent installation of the tiles by its original subcontractor or for any damage to the tiles themselves which was caused by the delamination. Instead, McDonald replaced the tiles in order to comply with its construction contract. Accordingly, regardless whether the damage to the tiles constituted "property damage" under the policy, the cost to replace the tiles arose from a pre-existing contractual obligation and not from a tort claim for damage to the tiles. Therefore, McDonald's contention fails. Cf. *Stratton & Co. v. Argonaut Ins. Co.*, 220 Ga. App. 654, 656-657 (2) (469 SE2d 545) (1996) (physical precedent only) (negligent work performed by a subcontractor damaged the insured's "work," the building and parking lot it had constructed; the owner subsequently sued the insured for defective and incomplete construction, which resulted in part from the subcontractor's work, and the insured's CGL policy covered damages arising from the suit).

4. McDonald contends that the trial court erred in finding that various "business risk" exclusions in the policy preclude its recovery in this case. Pretermitting whether the court's findings on this issue constituted error, McDonald's claims were not covered for other reasons, as explained in Division 1, supra. Therefore, this contention is moot. See also *Spacemakers of America v. SunTrust Bank*, 271 Ga.

---

[10] Although McDonald cites to *Federated Mut. Ins. Co. v. Grapevine Excavation*, 197 F3d 720, 722 (I) (5th Cir. 2000), and *E & R Rubalcava Constr. v. Burlington Ins. Co.*, 147 FSupp.2d 523, 527 (III) (A) (N.D. Tex. 2000), the insureds in those cases performed negligent construction which damaged property owned by other parties. Therefore, the insureds faced actual, not potential, tort liability for those damages.

[11] The policy defines an insured's "work" as including work performed by the insured or on its behalf and materials, parts, and equipment used in connection with such work. See Section V.21.

App. 335, 342 (3) (609 SE2d 683) (2005) (a trial court's grant of summary judgment will be affirmed if it is right for any reason).

## Case No. A06A0634

5. In its cross-appeal, Bituminous contends that the trial court erred in concluding that a jury issue existed regarding whether the other costs claimed by McDonald were covered under the policy. We agree.

The trial court specifically found that there was a jury issue as to whether McDonald's efforts in moving the furniture and removing the delaminated tiles constituted "property damage" under the policy. The undisputed evidence, however, shows that McDonald replaced the delaminated tiles because the tiles were unacceptable to the Housing Authority and failed to comply with the construction contract. In order to replace the tiles, McDonald had to, among other things, move the furniture out of the apartment, remove the old tiles, and, after the new tiles were installed, put the furniture back into the apartments. None of this would have been necessary if McDonald had not replaced the tiles pursuant to the construction contract. Moreover, it is undisputed that the $14,000 in costs associated with these efforts was for *labor* provided by McDonald's employees. There is no evidence in the record that any property was damaged in the process of moving furniture or removing the tiles, or that any third party asserted a claim for such damages against McDonald. Therefore, no jury issue exists as to whether McDonald's $14,000 claim arose from "property damage" under the policy.

Further, there is no evidence that McDonald would have incurred the costs of testing the materials to determine the cause of the delamination, as well as the myriad of other costs they have claimed under the policy, absent the need to replace the tiles so they conformed to the construction contract. Accordingly, as explained in Division 1, supra, these costs were not "sums that the insured becomes legally obligated to pay as damages" and were not covered under the policy as a matter of law. The trial court erred in denying Bituminous' motion for summary judgment in its entirety. *Elrod's Custom Drapery Workshop v. Cincinnati Ins. Co.*, 187 Ga. App. at 671.

6. Given our decisions in Divisions 1 and 5, supra, Bituminous' remaining contentions are moot.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 24, 2006 —
RECONSIDERATION DENIED JUNE 13, 2006 — 

*Griffin, Cochrane & Marshall, John D. Marshall, Jr., Alexander C. Covey,* for appellant.

*Bovis, Kyle & Burch, James E. Singer, Mark A. Cleary,* for appellees.