**THIRD DIVISION
MILLER, P. J.,
RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**November 20, 2012**

# In the Court of Appeals of Georgia

A12A0992.  MAXUM  INDEMNITY  COMPANY  v.  JOSE
    ALFREDO JIMENEZ et al.

MILLER, Presiding Judge.

Maxum Indemnity Company filed an action against its insured, Jose Alfredo Jimenez, and a claimant, Gill Plumbing Company, seeking a declaratory judgment that its commercial general liability ("CGL") policy did not afford coverage for liability associated with Jimenez's negligent pipe installation on a construction project that resulted in property damage to a dormitory at Georgia Southern University. The parties filed cross motions for summary judgment on the coverage issues. The trial court denied Maxum's motion, and granted Gill Plumbing's and Jimenez's motion, finding that the CGL policy provided coverage for the underlying claim. Maxum appeals, contending that the trial court erred in granting summary

judgment in favor of Gill Plumbing and Jimenez since (i) the underlying claim did not fall within the policy's coverage for "property damage" caused by an "occurrence;" (ii) the underlying claim did not fall within the "insured contract" exception to the "Contractual Liability" exclusion in the policy; and (iii) coverage was barred under the policy's "Contractor's Limitation Endorsement." We discern no error and affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). "Insurance in Georgia is a matter of contract, and we have long held that contract disputes are well suited for adjudication by summary judgment because construction of a contract is ordinarily a matter of law for the court." (Citations and punctuation omitted.) *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 423 (1) (591 SE2d 430) (2003). In this appeal, the relevant facts underlying the insurance claim are undisputed and the only question is whether the policy covers the claim. Under these circumstances, since only the legal issue of coverage is presented, this matter can be decided by summary judgment, not declaratory judgment. There are no factual disputes. See id. at 424 (1). Our review of the trial court's decision is de novo. See

*McDonald Constr. Co. v. Bituminous Cas. Corp.*, 279 Ga. App. 757, 760 (632 SE2d 420) (2006).

The record shows that the underlying suit involved a construction project for a dormitory on the campus of Georgia Southern University.[1] Gill Plumbing Company and Jose Alfredo Jimenez were hired as subcontractors to install the pipes for the project. Subsequent to the construction, a pipe burst occurred at the dormitory, which caused damage to several units, including the flooring, carpet, and walls. The underlying lawsuit was filed to recover the costs to repair the property damage in the dormitory. Claims for indemnification and contribution were asserted against Gill Plumbing and Jimenez as the plumbing subcontractors. Following a trial, the jury returned a verdict finding that Jimenez was at fault for causing the property damage at the dormitory, and that Jimenez was liable for $191,382.01 in damages that arose from his negligent pipe work during the project. Based upon the jury's verdict, the

---

[1] This is the third appearance of this case before this court. See *Gill Plumbing Co. v. Jimenez*, 310 Ga. App. 863 (714 SE2d 342) (2011) ("*Jimenez II*"); *Jimenez v. Gilbane Bldg. Co.*, 303 Ga. App. 125 (693 SE2d 126) (2010) ("*Jimenez I*"). The background facts and procedural history of the underlying case are as fully set forth in *Jimenez I*, supra, 303 Ga. App. at 126, and in *Jimenez II*, supra, 310 Ga. App. at 864-866, and need not be restated here.

3

trial court entered a judgment in favor of Gill Plumbing as to its claim for indemnification against Jimenez for the property damage.

Jimenez was insured under a CGL policy issued by Maxum Indemnity Company. Maxum filed the instant declaratory judgment action, seeking a declaration that the claim against Jimenez was not covered under its policy, and thus, it had no duty to indemnify Jimenez for the damages awarded in the underlying lawsuit.

"Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Citation omitted.) *Nationwide Mut. Fire Ins. Co.*, supra, 264 Ga. App. at 426 (3) (a). Here, the unambiguous terms of the policy provided, in relevant part, that Maxum agreed to "pay those sums that [Jimenez] becomes legally obligated to pay as 'damages' because of . . . 'property damage' to which [the] insurance applies." The policy further stated that the insurance applied to property damage "caused by an 'occurrence'." In turn, the Definitions section of the policy pertinently defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and defined "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful

4

conditions." Although the policy did not specifically define the term "accident," that term is commonly defined in Georgia as "an event which takes place without one's foresight or expectation or design." (Citation and punctuation omitted.) *American Empire &c. Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 751 (707 SE2d 369) (2011); see also *Nationwide Mut. Fire Ins. Co.*, supra, 264 Ga. App. at 426 (3) (a). Consistent with this common definition of "accident," the policy contained an exclusion stating that the insurance did not apply to property damage expected or intended from the standpoint of any insured. The policy also contained a "Contractual Liability" exclusion, which provided that the insurance did not apply to "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, that exclusion did not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract'" or "[t]hat the insured would have in the absence of the contract or agreement." An "insured contract" was pertinently defined to mean "[t]hat part of any other contract or agreement pertaining to [the insured's] business . . . under which [the insured] assume[d] the tort liability of another party to pay for . . . 'property damage' to a third person or organization." The policy excluded "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because [the insured's

5

work] was incorrectly performed on it." The property damage exclusion did not apply, however, to a "products-completed operations hazard," which included the insured's products or completed work. Lastly, the policy contained a "Contractors Limitation Endorsement" that excluded property damage sustained "by any person who [was] not [c]ontracted with [the insured.]"

1. Maxum first contends that the underlying claim did not fall within the policy's coverage for "property damage" caused by an "occurrence." We disagree.

Maxum's arguments in this regard have been decided adversely by the precedents of *American Empire*, supra, 288 Ga. at 751-752, and *SawHorse v. Southern Guar. Ins. Co. &c.*, 269 Ga. App. 493, 498-499 (2) (a), (b) (604 SE2d 541) (2004), which involved the same policy language and definitions of the "property damage" and "occurrence" terms as those presented here. The rulings in those cases establish that a subcontractor's faulty workmanship that causes unforeseen or unexpected damage to other property constitutes an "occurrence" under a CGL policy. See *American Empire*, supra, 288 Ga. at 751-752; *SawHorse*, supra, 269 Ga. App. at 498-499 (2) (a), (b). Indeed, the circumstances of the instant case are substantially similar to those presented in *American Empire*, where the Court held that coverage under a CGL policy applied to a claim against a plumbing subcontractor

6

to recover the cost to repair property damage caused by his faulty workmanship in construction projects. See *American Empire*, supra, 288 Ga. at 750-752.

Significantly, Maxum does not dispute that the underlying suit was filed after a pipe burst occurred at the dormitory, which caused property damage to several units. Here, as in *American Empire*, the underlying suit was pursued to recover the costs to repair the property damage caused by Jimenez's faulty plumbing work in the construction project. The jury's verdict entered a finding that Jimenez was at fault for causing the property damage at the dormitory and that the damages arose out of his work performed during the pipe installation. There was no evidence or suggestion that Jimenez's plumbing mistakes were expected or intentional. Under these circumstances, the trial court correctly concluded that Jimenez's acts constituted an "occurrence" involving "property damage" covered by the CGL policy. See *American Empire*, supra, 288 Ga. at 751-752; *SawHorse*, supra, 269 Ga. App. at 498-499 (2) (a), (b).

Maxum nevertheless argues that its policy with Jimenez did not afford coverage since the judgment entered against Jimenez in the underlying suit was for only contractual indemnity and breach of contract, which was outside the scope of the policy's coverage for property damage arising out of tort liability. Maxum's attempt

7

to characterize the underlying claim as involving only contractual damages for economic loss, however, is unavailing.

It is true that

[t]he purpose of comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product. . . . The coverage applicable under the CGL policy is for tort liability for injury to persons and damage to other property and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained. . . . Stated another way, CGL coverage is intended to cover the "potentially limitless liability" associated with the risk that the work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the completed work itself, and for which the insured may be found liable. For there to be coverage under a CGL policy for faulty workmanship, there would have to be damage to property other than the work itself and the insured's liability for such damage would have to arise from negligence, not breach of contract.

(Citations and punctuation omitted.) *McDonald Constr. Co.*, supra, 279 Ga. App. at 761-762 (1). Although the complaint against Jimenez set forth both a breach of contract claim and a tort claim, both claims were based upon his defective workmanship in the pipe installation and the resulting property damage to the

8

dormitory. The sole basis for the jury's award of damages was the claim for the damage to the property. As explained in *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. 508, 512 (3) (417 SE2d 197) (1992), a claim against an insured for defective workmanship on a construction project may be set forth as both a breach of contract claim and a tort claim. Id.

> A contractor who undertakes a construction project is required by law to exercise ordinary care not to endanger the persons or property of others. This legal duty is imposed on the contractor by the express or implied contractual relationship created when the contractor undertakes the project. The breach of this legal duty, imposed by contract, but existing in law apart from the contractual obligation, may constitute both a tort arising from the contract, and a breach of the contractual relationship itself. In such tort cases the injury to the plaintiff has been an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit.

(Citations and punctuation omitted.) Id. at 512 (3). The underlying claim against Jimenez was to recover the cost of repairing the damage to the dormitory caused by his negligent workmanship, and thus, it was covered under the CGL policy. See *American Empire*, supra, 288 Ga. at 751-752. Compare *McDonald Constr. Co.*, supra, 279 Ga. App. at 761-762 (1) (holding that CGL policy did not provide coverage for costs to replace tiles in order to comply with a construction contract; there was no

9

evidence of any damage to property, and the tiles were only replaced because they failed to conform to the contract's requirements); *Mack v. Nationwide Mut. Fire Ins. Co.*, 238 Ga. App. 149, 149-150 (517 SE2d 839) (1999) (insurance policy did not provide coverage for reimbursement of finance charges since the loss of use of money did not relate to physical injury to tangible property).

2. Maxum next contends that coverage was barred by the policy's "Contractual Liability" exclusion and did not fall within the "insured contract" exception to the exclusion. Alternatively, Maxum argues that the terms of the "insured contract"exception need not be reached in light of the initial consideration that the policy did not cover the claim. In this regard, Maxum merely reasserts its arguments that the underlying claim was for "contractual indemnity only" and did not pertain to tort liability. Again, Maxum's arguments are without merit.

Contrary to Maxum's argument, the policy's "Contractual Liability" exclusion does not apply in this case. The exclusion stated that the policy did not cover "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The policy further expressed, however, that the exclusion did not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract'" or "[t]hat the insured would have

in the absence of the contract or agreement." Significantly, Jimenez's obligation to pay the damages award was not based upon a contractual assumption of liability, but rather, was based upon his tort liability arising from his own negligent pipe workmanship. For the reasons explained in Division 1 above, we reject Maxum's attempts to mischaracterize the underlying claim as for "contractual indemnity only." To the extent that Jimenez was directly liable in tort for the property damage caused by his negligence, regardless of the contract, the exclusion did not apply.

Maxum's reliance upon *Scottsdale Ins. Co. v. Great Am. Assur. Co.*, 271 Ga. App. 695 (610 SE2d 558) (2005) is misplaced. In *Scottsdale*, a landlord leased certain space to a vision care provider pursuant to a lease agreement. Id. at 695. The lease agreement contained a provision in which the landlord agreed to indemnify the tenant from liability and damages incurred for personal injury arising out any occurrence at the leased premises. Id. The vision care provider was subsequently sued by its patient for medical malpractice based upon a claim that her medical condition had been misdiagnosed. Id. at 696. The vision care provider's insurer brought a claim against the landlord's insurer, contending that the lease agreement was an "insured contract" affording coverage under the landlord's business liability policy. Id. at 696. We held that the policy did not provide coverage for the claim since the policy did not insure

11

against the landlord's failure to abide by the terms of the lease agreement. Id. at 696 (1). Notably, in reaching our holding, we recognized that the alleged "injury" was the failure to fulfill its contractual obligation to indemnify the tenant. Id. at 697 (1). There was no claim that the landlord engaged in any negligence or tortious conduct that gave rise to the patient's underlying suit.

The instant case is clearly distinguishable from *Scottsdale*. Here, the claim against Jimenez was based on his own tortious negligence which caused the property damage at issue. As such, the underlying claim was not merely based upon a contractual claim, but rather was predicated upon Jimenez's tort liability for which coverage under the CGL policy applied. See *American Empire*, supra, 288 Ga. at 751-752.

3. Lastly, Maxum argues that coverage was barred by the policy's "Contractors Limitation Endorsement." This argument is likewise without merit.

The cited endorsement contained an exclusion for "Contracted Persons," which provided that

> [the] insurance does not apply to . . . "property damage" . . . sustained by any person who is:

> 1. Contracted with [the insured] or with any insured for services; or

2. Employed by, leased to or contracted with any entity that is:

> A. Contracted with [the insured] or with any insured for services; or

> B. Contracted with others on [the insured's] behalf for services.

By its terms, the exclusion barred coverage for damage sustained by fellow contractors or subcontractors on the project, not to other third parties who sustained property damage as a result of the work on the project. The damage was sustained by Georgia Southern University, not by a contractor on the project. Consequently, the exclusion did not apply. To construe the terms of the exclusion differently would be contrary to the purpose of CGL policy insurance and make the policy coverage illusory. When the provisions of an insurance contract are repugnant to one another, the provision most favorable to the insured will be applied. See *Isdoll v. Scottsdale Ins. Co.*, 219 Ga. App. 516, 518 (1) (466 SE2d 48) (1995). The policy's terms provided coverage for property damage arising out of the insured's completed work on the project. The exclusion, which otherwise failed to define the term "Contracted Persons," cannot be construed in a manner that would be repugnant to the coverage terms or render the CGL policy illusory.

13

The trial court's decision granting summary judgment in favor of Gill Plumbing and Jimenez was proper.

*Judgment affirmed. Ray and Branch, JJ., concur*.