[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10119
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-03494-TWT

FIRST MERCURY INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

EMILY SUDDERTH,

Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 21, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and WILSON, Circuit Judges.

PER CURIAM:

Emily Sudderth and First Mercury Insurance Company filed cross motions

for summary judgment in this declaratory judgment action. The district court

denied Sudderth's and granted First Mercury's.  This is Sudderth's appeal.  We

review de novo the district court's grant of summary judgment and view the

evidence in the light most favorable to Sudderth.  Am. Bankers Ins. Co. of Fla. v.

Nw. Nat'l Ins. Co., 198 F.3d 1332, 1334 (11th Cir. 1999).

**I.**

Sudderth's right foot was injured as she and several friends were about to

leave the Soho Grand, a nightclub in McDonough, Georgia.  She and one of her

friends were at the bar paying their tabs when they heard a noise from behind

them.  According to Sudderth's deposition testimony, she turned around just in

time to see one of the bouncers, Eric Perkins, throw a chair.  The next thing she

remembers is falling to the floor because of an excruciating pain in her right foot.

Sudderth's friends helped her leave the Soho Grand and sit on the sidewalk, where

she waited until an ambulance arrived and took her to the hospital.  She has

suffered pain in her right foot and other problems since then.

The depositions of other witnesses describe the incident in greater detail.

Sudderth's friend remembered hearing a noise and then turning to see Perkins set a

chair in motion.  Although the friend could not remember whether the chair was

"kicked or thrown or pushed, [or] knocked,"[1] she testified that Perkins moved the

---

[1] To the extent that this testimony contradicts Sudderth's own testimony that Perkins threw
the chair, we must accept Sudderth's testimony and reject her friend's.  Our duty to read the
record in the light most favorable to Sudderth does not include a "duty to disbelieve [her] sworn

2

chair while he was "pulling a guy out" of the Soho Grand who "was drunk and causing a scene." R. at 646–47. That "guy" was Marcus Majano.

Neither Perkins nor Majano were deposed, but two other security guards were. One of them, a second bouncer, was inside the Soho Grand with Perkins. The second bouncer testified that "Perkins had to grab [Majano] physically and get [him] out of the bar." Id. at 695. He remembers Perkins putting Majano in a "bearhug" and "dragging" Majano across the dance floor. Id. at 697, 701. The last thing the second bouncer saw was Majano going "limp" and "kind of calm[ing] down" as Perkins dragged him towards the door and out of sight. Id. at 701. The other security guard who was deposed, an off-duty police officer, was standing outside the Soho Grand during the incident. He testified that he opened the front door to see "Perkins carrying Majano" — who was at this point "kicking and flailing" — "out from the bar." Id. at 666. As Perkins dragged Majano out of the bar, a second man attacked Perkins, and the off-duty officer had to physically restrain the second man. The off-duty officer then arrested both Majano and the second man.

---

testimony." Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc). Because Sudderth is the nonmoving party, we must accept her testimony even if other evidence in the record is "more favorable on a factual issue than [her] own testimony." Jones v. UPS Ground Freight, 683 F.3d 1283, 1295–96 (11th Cir. 2012); see id. at 1296 n.38 (discussing the "good reason" for this rule). Accepting Sudderth's testimony means that it is a fact for purposes of this appeal that Perkins threw the chair that hit her.

After the incident, Sudderth filed a lawsuit in Georgia state court to recover for the injuries to her right foot caused by the chair that Perkins threw. In that lawsuit she sought to hold Perkins and several other defendants jointly and severally liable for her injuries. First Mercury defended the state court lawsuit according to the terms of the general liability insurance policy that it had issued to the Soho Grand. While the state court lawsuit was pending, First Mercury filed this declaratory judgment action in the district court, in which it asked the court to construe the Soho Grand's insurance policy. The parties then settled the state court lawsuit and made its outcome contingent on the outcome of this declaratory judgment action.

The insurance policy at the center of this action provides coverage to the Soho Grand for "bodily injury" claims up to a "general aggregate limit" of $2 million. But the policy also contains an "Assault & Battery Coverage Endorsement." The assault and battery endorsement lowers the coverage limit to $100,000 for:

> Claims or suits to recover damages for bodily injury or property damage based upon, related to, arising out of, directly or indirectly resulting from, in consequence of, in any way connected to, or in the sequence of events involving any actual or alleged assault and/or battery, as those terms are defined herein . . . .

4

R. at 72 (emphasis and quotation marks omitted).  It then defines a "battery" as "a harmful or offensive contact by a person or thing, or a harmful or offensive contact between or among two or more persons."  Id. at 76.

In the district court, First Mercury and Sudderth stipulated that this case presents only one question:  Does the assault and battery endorsement apply to Sudderth's claim?  First Mercury contends that it does, and Sudderth contends that it does not.  They each filed motions for summary judgment.  The district court agreed with First Mercury and entered an order granting its motion for summary judgment and denying Sudderth's.  She appeals that order.

## II.

Sudderth contends that the assault and battery endorsement does not apply to her claim for the injuries she suffered during Perkins' removal of Majano from the Soho Grand.  She is mistaken.

The record shows that Perkins committed a battery — as defined by the assault and battery endorsement in the Soho Grand's insurance policy — on Majano.  The endorsement defines a "battery" as "a harmful or offensive contact between or among two or more persons."  Sudderth concedes that there was "contact" between Perkins and Majano; she disputes that it was "harmful or offensive."  Perkins forcibly removed Majano from the Soho Grand.  He placed Majano in a "bearhug."  And as he "dragg[ed]" Majano out the front door, Majano

5

began "kicking and flailing." Then another man attacked Perkins. An off-duty police officer had to help Perkins physically restrain both Majano and the other man. In Georgia, "even minimal touching" can support a cause of action for battery. Darnell v. Houston Cnty. Bd. of Educ., 506 S.E.2d 385, 388 (Ga. Ct. App. 1998); see Jarrett v. Butts, 379 S.E.2d 583, 585–86 (Ga. Ct. App. 1989) (holding that "touch[ing the] wrists and hair" of a student to pose her for a picture at a school dance could constitute a battery). Perkins' touching of Majano was nothing if not "minimal."

Sudderth disputes none of that. Instead, she argues that the record contains no evidence that Majano himself found his contact with Perkins to be offensive. But she misunderstands the objective nature of the offensiveness inquiry. See Restatement (Second) of Torts § 19 (1965) ("A bodily contact is offensive if it offends a reasonable sense of personal dignity.") (emphasis added), cited with approval by Vasquez v. Smith, 576 S.E.2d 59, 62 (Ga. Ct. App. 2003). In other words, the question is not whether Majano in fact found his contact with Perkins to be offensive, but instead whether a reasonable person would have done so. See Lawson v. Bloodsworth, 722 S.E.2d 358, 359–60 (Ga. Ct. App. 2012) ("The test is what would be offensive to an ordinary person not unduly sensitive as to his dignity."). A reasonable person would find it offensive to be placed in a bearhug and dragged out of a nightclub.

6

Despite that, Sudderth argues that Perkins did not commit a battery because Majano "was submitting" to being removed from the bar. She never uses the word "consent," but her argument seems to be that Perkins' removal of Majano could not have been a battery because Majano consented to it. See Ga. Code Ann. § 51-11-2 ("As a general rule no tort can be committed against a person consenting thereto . . . ."). She is right that another bouncer testified that he saw Majano go "limp" and "kind of calm down" as Perkins dragged him towards the front door. She cites no Georgia law, however, for the proposition that going "limp" during the commission of a battery amounts to consent to it. In any event, there is a bigger problem with her consent argument. The record shows that Majano did not start limp or calm and did not stay limp or calm. Just after Perkins dragged him out of the other bouncer's line of sight and into the line of sight of the off-duty police officer, Majano began kicking and flailing and was eventually physically restrained again.

A reasonable person would have found it offensive to be forcibly removed from the Soho Grand in the manner that Perkins removed Majano, and there is no evidence that Majano consented to his removal. The contact between the two of them was therefore a battery within the meaning of the assault and battery endorsement.

The endorsement applies to Sudderth's claim if the injuries she suffered were "based upon, related to, arising out of, directly or indirectly resulting from, in consequence of, in any way connected to, or in the sequence of events involving" Perkins' battery of Majano.  While Perkins was removing Majano from the Soho Grand, Perkins threw a chair, which hit Sudderth and caused her injuries.  To use the endorsement's language, she suffered those injuries "in the sequence of events involving" Perkins' removal of Majano, which was a battery.  Because of that, the assault and battery endorsement applies to Sudderth's claim unless Georgia law prevents us from applying it as written.

## III.

Sudderth contends that if the text of the assault and battery endorsement applies to her claim, Georgia's rules for construing insurance contracts prevent us from applying it as written.  She supports that contention with two arguments.

First, she argues that no reasonable layman would read the assault and battery endorsement to apply to her claim.  See York Ins. Co. v. Williams Seafood of Albany, Inc., 223 F.3d 1253, 1254–55 (11th Cir. 2000) (describing the Georgia rule that the terms of an insurance policy mean "what a reasonable person in the position of the insured would understand them to mean" and are "read as a layman would read" them) (quotation marks omitted).  Recall the endorsement's definition of a "battery":  "a harmful or offensive contact by a person or thing, or a harmful

8

or offensive contact between or among two or more persons." Sudderth asserts that a reasonable layman would read that definition and understand that it defines a battery as "a violent act that intentionally causes substantial harm." The problem with her assertion is that it is inconsistent with the endorsement's unambiguous definition of battery. See Furgerson v. Cambridge Mut. Fire Ins. Co., 516 S.E.2d 350, 352 (Ga. Ct. App. 1999) ("Policy terms cannot be ignored or rewritten to provide coverage where there is none."); Burnette v. Ga. Life & Health Ins. Co., 379 S.E.2d 188, 189 (Ga. Ct. App. 1989) ("Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage.").

Second, Sudderth argues that applying the assault and battery endorsement as written would violate Georgia's prohibition on "illusory" coverage in insurance policies, which is violated when a policy "purport[s] to offer coverage that inevitably will be defeated by one of the policy's exclusions." Cynergy, LLC v. First Am. Title Ins. Co., 706 F.3d 1321, 1327 (11th Cir. 2013). Coverage in one part of an insurance policy is illusory when an exclusion in another part "completely nullifies" the coverage. Id. Exclusions that make coverage illusory are ineffectual. See, e.g., Transp. Ins. Co. v. Piedmont Constr. Grp., LLC, 686 S.E.2d 824, 828 (Ga. Ct. App. 2009); see also Maxum Indem. Co. v. Jimenez, 734

9

S.E.2d 499, 505 (Ga. Ct. App. 2012) ("When the provisions of an insurance contract are repugnant to one another, the provision most favorable to the insured will be applied.").

According to Sudderth, applying the definition of battery as written would completely nullify the policy's coverage for "bodily injury." The assault and battery endorsement nullifies nothing, however. It applies only to claims connected with assault or battery, and it does not nullify all coverage of those claims but only reduces the amount of the coverage. Sudderth's "unhappiness that the [endorsement] is triggered by the undisputed facts underlying this particular case does not transform" it into a violation of the prohibition against illusory coverage. Cynergy, 706 F.3d at 1327.

## IV.

For the reasons discussed, the district court properly granted summary judgment to First Mercury. Because of that holding, we do not address Sudderth's additional argument that the district court erred by denying her own motion for summary judgment.

**AFFIRMED.**