**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 28, 2017**

# In the Court of Appeals of Georgia

A17A0314. SOUZA v. BERBERIAN.

McFADDEN, Presiding Judge.

John Souza appeals the partial grant of summary judgment to John Berberian in Souza's action arising from a business dispute. The trial court granted Berberian's motion for summary judgment on Souza's claims that depend on the existence of a contract between them. The court also granted Berberian's motion for summary judgment on Souza's claim for breach of fiduciary duty; his claim alleging breach of a non-disclosure agreement entered into by two non-parties; and his claim for punitive damages. Souza's claims for unjust enrichment, quantum meruit, and attorney fees remain pending in the trial court.

Souza appeals the grant of Berberian's motion for summary judgment on the contract-based claims and on the claim for breach of a non-disclosure agreement.

Souza argues that whether he and Berberian entered a contract depends on disputed facts, but the email on which he relies to establish contract terms is too indefinite to be enforceable as a contract. Souza argues that the trial court erred by granting Berberian summary judgment on Souza's claim for breach of the non-disclosure agreement, but as the trial court found, Berberian was not a party to that agreement, so it cannot be enforced against him. Accordingly, we affirm the trial court.

1. *Contract-based claims.*

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Burns v. Dees*, 252 Ga. App. 598, 599 (557 SE2d 32) (2001) (citation and punctuation omitted).

So viewed, the record shows that Souza knew both Berberian, who was associated with a company called United Allergy Services, and Jeff Gallups, the owner of Milton Surgical Associates d/b/a The ENT Institute. Souza introduced Berberian and Gallups, believing that they could enter a profitable business

relationship whereby United Allergy Services would provide allergy testing services and treatment to ENT Institute patients.

According to Souza, he and Berberian agreed to form and co-own an entity that would sign a contract with ENT Institute to facilitate its relationship with United Allergy Services. He alleges that the terms of the agreement are set out in an August 19 email from Berberian, which is the basis of his contract-based claims.

But while that email sets out many details of the contemplated agreement, it does not set out the terms essential to a contract. And no other evidence fills the gaps. Berberian wrote that he and Souza "came to terms of what the deal points are." He outlined what he referred to as the "unofficial points," including that Souza would have 21 percent of "equity" but that his percentage was subject to change if Gallups "negotiate[d] a better deal on his side." Berberian believed that the operating agreement for one of his companies could serve as a model operating agreement, but that they "will need to go over it in detail to maybe add or change some points." He outlined some of the points that he "remember[ed] off the top of [his] head." Berberian concluded that, "The [United Allergy Services] licensing agreement will be signed by our Newco which I will purchase tonight. It will have references to ENT

3

Institute. . . . I'm certain I have not covered all the points, no[r] is this set in stone. But it is however a high level view of what we have discussed."

Two days after sending this email, on August 21, 2014, Berberian formed Pinnacle MSO, LLC. On September 13, 2014, Pinnacle entered an agreement with ENT Institute, and United Allergy Services began providing services to ENT Institute.

In the meantime, Berberian and Souza, themselves and through counsel, continued to exchange correspondence regarding their relationship. On August 22, 2014, Berberian emailed his counsel that "Deal has been accepted by all parties. Souza will not be a member of Pinnacle MSO. He will have phantom shares. Deal is at 55/45. Souza gets 16 percent." In September or October, Berberian emailed Souza a draft of a "phantom unit agreement," that granted Souza "phantom units" equal to 16 percent "of the Units of [Pinnacle]." Souza did not sign.

On November 11 Souza's counsel emailed Berberian's counsel that there was "an agreement on payment of 16% on allergy testing," although the August 19 email upon which Souza bases his contract claims stated that Souza's interest was 21 percent. The parties continued to disagree about exactly what Souza had a percentage of. In December, his counsel emailed Berberian's counsel that Souza "had never

4

agreed to 16% *net* of anything." (Emphasis supplied). The next day, Souza's counsel emailed Berberian's counsel that "[r]ather than a phantom share agreement, Mr. Souza, through Reliant Biomedical Group, LLC, [apparently one of Souza's companies] will enter into a fee sharing agreement with Pinnacle" under which "Pinnacle will pay to Reliant 16% of the invoiced amount by the 25th of each month. . . ." Counsel added that "[i]n the event of a sale of the company (assets or entity), Reliant will get 16% of the gross sales price at closing." Berberian's counsel responded that he would consult his client.

On December 5, Berberian's counsel emailed Souza's counsel a draft agreement between Souza and Pinnacle. The agreement provided that Souza would have an unspecified amount of phantom shares in Pinnacle and would "be paid 16% of the net profits of the Company." Souza's counsel responded with a draft of his own that omitted the references to phantom shares and provided that Reliant Biomedical Group would "be entitled to receive sixteen percent (16%) of the gross receipts paid to [Pinnacle] arising from the delivery of allergy services."

Berberian's counsel responded that "[t]he agreement was not to pay a percentage of gross. Distributions will be made out of net." In January 2015, Souza's counsel responded in turn with another draft. He followed up with an email stating

5

that Souza's position was that "the parties had an enforceable oral agreement (the essential material terms of which were that Mr. Souza would get 16% of the revenue from allergy testing services plus 16% if the company got sold) that had not been reduced to writing." Just over a month later, Souza filed this action. Two months after that, ENT Institute terminated the agreement with Pinnacle.

Souza argues that the parties entered an enforceable contract with all material terms defined by the August 19 email. We disagree.

"It is well-established that a contract does not exist unless the parties agree on all material terms. OCGA § 13-3-2 . A contract cannot be enforced if its terms are incomplete, vague, indefinite or uncertain." *Burns*, 252 Ga. App. at 601-602 (1) (a) (citation omitted). The August 19 email is too indefinite to be enforceable as a contract. On its face, it states that the terms are not "set in stone." It states that some terms may need to be added and others changed. It explicitly states that Souza's percentage interest "will change if [Gallups] negotiates a better deal." The email does not even establish *what* Souza will have an interest in: a corporation? a partnership? a limited liability company? a share in revenue?

Further, the parties' continued negotiations demonstrate that they had not reached agreement on all material terms. After the August 19 email, the parties and

6

their counsel discussed Souza's interest in the enterprise as owning phantom shares in Pinnacle, as receiving a percentage of net profits, as receiving a percentage of gross profits, and as receiving a portion of the proceeds realized from any sale of the enterprise. See *Aukerman v. Witmer*, 256 Ga. App. 211, 214-215 (1) (568 SE2d 123) (2002) (oral agreement that one party would buy other's stock for $ 1 million net was unenforceable, where it did not provide for structure of transaction, pricing structure, or resolution of tax issues and evidence showed parties continued to negotiate many of these terms and discuss alternative terms after entering into agreement).

As Souza tacitly concedes in his reply brief, the parties had not even reached agreement on a number, whether 16 percent or 21 percent. As detailed above, although Souza's counsel repeatedly referred to 16 percent in his correspondence, the August 19 email upon which Souza bases his contract claims stated that Souza's interest was 21 percent and in his complaint, Souza sought a declaration that he owns 21 percent of Pinnacle. Souza argues that "the portion of the agreement that would determine the ownership percentages are irrelevant to the question of assent." But the size of Souza's interest in any venture with Berberian is a material term. See *McElvaney v. Roumelco, LLC*, 331 Ga. App. 729, 733 (1) (771 SE2d 419) (2015) (although oral agreement may not have been sufficiently definite as to parties'

7

ownership interests in company, defendant twice admitted in writing that plaintiff owned 47 percent of the company, which was evidence that the parties had agreed on this material term).

"The facts in the record do not show with reasonable certainty what the parties intended to do in this agreement." *Burns*, 252 Ga. App. at 604 (1) (a) (i) (oral agreement giving party 1/3 interest in profits and ultimate sale of business venture unenforceable because it lacked terms concerning allocation of costs and losses, frequency of payments, manner of calculating proceeds, and time of distribution). See also *Massih v. Mulling*, 271 Ga. App. 685, 686-687 (1) (610 SE2d 657) (2005) (defendant's promise that plaintiff would have a 20 percent ownership in new corporation was unenforceable because details were never resolved, including how plaintiff would receive her ownership interest and how the corporation would be structured); *Key v. Naylor, Inc.*, 268 Ga. App. 419, 425 (3) (602 SE2d 192) (2004) (agreement to transfer 20 percent of stock was unenforceable where agreement did not provide for when or if transfer was to be made, what stock was to be conveyed, and what the percentage related to). Consequently, the trial court did not err by granting Berberian summary judgment on Souza's contract-based claims.

2. *The non-circumvention provision of the non-disclosure agreement.*

8

Souza argues that the trial court erred by granting Berberian summary judgment on Souza's claim to enforce a non-circumvention provision in a non-disclosure agreement entered into by third parties. We disagree.

Before Souza introduced Berberian and Gallups, two non-party companies associated with Souza and Berberian, Paradise Media Ventures d/b/a Interactive Media Ventures LLC and WellCorpRx LLC, entered a non-disclosure agreement. The agreement included a non-circumvention provision that stated "during the term of this agreement and for 3 years thereafter, Recipient [defined in the agreement as WellCorpRx ] will not attempt to do business with, or otherwise solicit any business contact or relationship created or referred by Owner [defined in the agreement as Paradise Media Ventures ] during the term of the agreement." The agreement was signed by Souza as "Chief Strategist" of Paradise Media Ventures and Berberian as "CEO and Co-Founder" of WellCorpRx.

As the trial court found, "[t]he NDA on its face did not prohibit the conduct of Berberian and Souza individually. The NDA was between two entities that are not parties to this suit." "As a general rule, an action on a contract . . . shall be brought . . . against the party who made it. . . ." OCGA § 9-2-20 (a). "[I]t is axiomatic that a person who is not a party to a contract is not bound by its terms." *Primary*

9

*Investments, LLC v. Wee Tender Care III*, 323 Ga. App. 196, 199 (1) (746 SE2d 823) (2013) (citations and punctuation omitted). Here, the parties to the non-disclosure agreement are Paradise Media Ventures d/b/a Interactive Media Ventures LLC and WellCorpRx LLC. Because Berberian was not a party to the agreement, Souza cannot enforce it against him. The trial court did not err in granting Berberian summary judgment on this claim. But see *Rymer v. Polo Golf & Country Club Homeowners Assn.*, 335 Ga. App. 167, 170 (1) (a) (780 SE2d 95) (2015) ("If . . . . subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate. The posture of the case can be changed by an amendment to the complaint or by the submission of additional evidence.") (citations and punctuation omitted).

*Judgment affirmed. McMillian and Bethel, JJ., concur.*