**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2020**

# In the Court of Appeals of Georgia

A19A1952. KITTRELL v. DREAM BUILDER INVESTMENT, INC. et al.

MCFADDEN, Chief Judge.

Anthony Kittrell provided Dream Builder Investment, Inc. $25,000 in connection with a real estate development project. Dream Builder, in turn, gave Kittrell a "Funding Commitment Letter" promising to repay Kittrell either $30,000 or $50,000 depending on whether a bank loan closed. When Dream Builder did not pay Kittrell, he sued Dream Builder and various individuals for breach of contract and fraud. This appeal concerns Kittrell's claims against two of those individuals, Johnny Johnson and Pernell D. Smith.

Kittrell challenges two trial court rulings involving Johnson: (1) a ruling opening default after Johnson failed to answer the complaint or move to open default

for nearly 11 months after accepting service of the complaint; and (2) a ruling in Johnson's favor on cross-motions for summary judgment. The trial court did not address the promptness of Johnson's motion to open default after he received notice of the default judgment against him, so we vacate the trial court's ruling opening default and remand the case to the trial court for further proceedings on that issue. Because the outcome of further proceedings on the motion to open default will affect the appropriateness of summary judgment on the claims against Johnson, we also vacate the trial court's grant of summary judgment to Johnson and remand for further proceedings on that issue.

Kittrell challenges the trial court's ruling in Smith's favor on cross-motions for summary judgment. Because Kittrell has pointed to no evidence that Smith breached a contractual obligation owed to him or made any representations to him that constitute actionable fraud, we affirm the grant of summary judgment to Smith.

1. *Motion to open default.*

The trial court opened default in Kittrell's case against Johnson after finding that Johnson both met the four conditions for opening a prejudgment default under

OCGA § 9-11-55 (b)[1] and demonstrated a "proper case," one of three grounds for opening a default under that Code section. See generally *Stewart v. Turner*, 229 Ga. App. 119, 121 (2) (493 SE2d 251) (1997) (under OCGA § 9-11-55 (b), "a prejudgment default may be opened on one of three grounds if four conditions are met") (emphasis omitted). Our review of this ruling is highly deferential and we will reverse only if the trial court manifestly abused his discretion. See *In re Turk*, 267 Ga. 30, 31 (1) (471 SE2d 842) (1996).

The "proper case" ground for opening default "has been construed to confer discretion on the trial court broader than that conferred on the other two grounds[,] as if reaching out to take in every conceivable case where injustice might result if the default were not opened," *Legacy Hills Residential Assn. v. Colonial Bank*, 255 Ga. App. 144, 145 (564 SE2d 550) (2002) (citations and punctuation omitted), although "the defendant's failure to file a timely answer must not have resulted from wilful or gross negligence." *Bowen v. Savoy*, __ Ga. __, __ (__ SE2d __) (Case No. S19G0278, decided Feb. 28, 2020). This is an "intensely fact-specific inquiry." Id. It includes consideration of "whether the defaulting party acted promptly to open the default

---

[1] Even though the trial court entered a default judgment as to liability, this case falls under OCGA § 9-11-55 (b) because the trial court reserved the issue of damages. See *Griffin v. Rutland*, 259 Ga. App. 846, 847 (2) (578 SE2d 540) (2003).

upon learning no answer had been either filed or timely filed." *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 145-146 (2) (661 SE2d 185) (2008).

Johnson filed an untimely answer, along with his motion to open default, nearly 11 months after he acknowledged service of the complaint. He offered an explanation for a portion of this 11-month delay. In his affidavit supporting his motion to open default he testified that he gave his former counsel the complaint "fully believing that former counsel would Answer the Complaint in the required time period" and that "until [he] received notice of default judgment, [he] was unaware Anthony Kittrell's Complaint had not been answered." The trial court accepted this explanation, finding in his order that "it was reasonable under the circumstances for Johnson to believe former counsel would file an Answer to Plaintiff's Complaint where counsel accompanied him to be served with said Complaint[.]" This finding fell within the trial court's broad discretion.

But the explanation cited by the trial court in his order only pertained to the period of time *before* Johnson learned that his former counsel had failed to answer the complaint. The record shows that the trial court entered default judgment against Johnson on February 1, 2016. While the record does not affirmatively show when Johnson received notice of this default judgment, it shows that on March 21, 2016,

4

the parties, including Johnson's counsel, attended a hearing on the issue of damages following the default judgment, so we presume that Johnson knew of the default judgment by that date at the latest. But Johnson did not move to open default or file an answer for several more months, until August 5, 2016.

In determining whether there was a "proper case" for opening default, the trial court needed to consider whether Johnson acted promptly to open the default after learning that his former counsel had not filed an answer and that a default judgment had been entered against him. See *Vibratech, Inc.*, 291 Ga. App. at 145-146 (2). Although Johnson offered no evidence specifically on this point in his motion to open default and supporting documents, the record shows activity in the case, including hearings, during the period between the entry of the default judgment and the filing of the motion to open default. The record does not show what occurred at those hearings or whether the hearings had any bearing on Johnson's several-month delay in moving to open default, because Kittrell opted not to include hearing transcripts in the appellate record. But the trial court was in the position to assess whether Johnson had a reasonable excuse or explanation for that delay.

Because the trial court does not appear to have considered whether Johnson acted promptly in moving to open default, we vacate the order opening default and

5

remand for the trial court for additional findings necessary for a ruling on the motion to open default or for other proceedings not inconsistent with this opinion.

2. *Summary judgment.*

On the parties' cross-motions for summary judgment, the trial court granted summary judgment to Johnson and Smith and denied summary judgment to Kittrell. Kittrell challenges these rulings. As detailed below, we vacate as to Johnson and remand so that after the trial court rules on the motion to open default he may consider, if appropriate, any admissions that are the result of a default in ruling on summary judgment. We affirm as to Smith because Kittrell has not pointed to evidence giving rise to a genuine issue of material fact as to either his contract or fraud claim.

(a) *Claims against Johnson.*

As explained in Division 1, supra, we vacate the trial court's ruling on Johnson's motion to open default and remand for further proceedings on that motion. The outcome of those further proceedings may affect the appropriateness of summary judgment on Kittrell's claims against Johnson. See *Zhong v. PNC Bank, N. A.*, 345 Ga. App. 135, 139 (2) (b) (812 SE2d 514) (2018) ("(A)lthough a default operates as an admission of the well-pled factual allegations of the complaint, it does not admit

6

allegations not well pled, forced inferences, or conclusions of law. Default does not preclude a defendant from showing that under the facts as deemed admitted, no claim exists that would allow the plaintiff to recover.") (citations and punctuation omitted). So we vacate the trial court's summary judgment rulings in favor of Johnson and remand so that if the trial court does not open default he may consider in the first instance the effect of any admissions that arise by virtue of the default judgment on Kittrell's and Johnson's cross-motions for summary judgment.

(b) *Claims against Smith.*

We find, however, that the trial court properly granted summary judgment to Smith. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). As a

> defendant who will not bear the burden of proof at trial, [Smith] need not affirmatively disprove [Kittrell's] case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of [Kittrell's] case. [If Smith] discharges this burden, [Kittrell] cannot rest on [his] pleadings, but rather must point to specific evidence giving rise to a triable issue.

7

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted).

The evidence in this case is comprised mainly of Kittrell's first complaint, which he verified, see *Abdullah v. Winslow at Eagle's Landing Homeowners Assn.*, 349 Ga. App. 615 (823 SE2d 872) (2019), and various exhibits and excerpts of testimony from a separate bankruptcy proceeding that the trial court, at Kittrell's request, appears to have considered. In their appellate briefs, Smith and Kittrell dispute whether the trial court held an evidentiary hearing on the summary judgment motions, but the record contains no indication of a hearing. And although Smith cited Kittrell's deposition in his summary judgment filings, he did not make that deposition part of the record by attaching it as an exhibit to the summary judgment motion or filing it separately with the trial court.

This sparse evidence, viewed in the light most favorable to Kittrell, see *Cowart*, 287 Ga. at 624 (1) (a), shows that Smith approached Kittrell about lending $25,000 to Dream Builder for a real estate development project. Smith's brother was Dream Builder's principal and owner.

Smith told Kittrell that the money he provided Dream Builder would be repaid within two weeks, after Dream Builder "secure[d] additional funds to close on the

8

[project]". To this end, Dream Builder drafted a "Funding Commitment Letter," dated December 11, 2011, that was signed by Smith's brother (its owner) and by Johnson (who "was engaged to assist in the financing of the project"). That document provided that the loan was "[d]ue and payable at closing" and that Dream Builder "agree[d] to pay an additional $25,000.00 to lender at closing. Total amount of repayment $50,000.00." It further stated that the "[t]otal amount due to [l]ender if loan d[id] not close [wa]s $30,000.00."

Kittrell provided Dream Builder $25,000. But no closing occurred and when Kittrell later asked to be paid under the terms of the funding commitment letter, Dream Builder refused to pay him.

(i) *Breach of contract claim against Smith.*

The trial court did not err in granting summary judgment to Smith on Kittrell's claim of breach of the terms of the funding commitment letter because Kittrell has pointed to no evidence that Smith was a party to any agreement memorialized in that letter. Smith was not named as a party in the letter, nor did he sign it on Dream Builder's behalf. To the extent Kittrell argues that Smith should be held liable for Dream Builder's breach of contract because Dream Builder's corporate veil was breached, that doctrine does not apply to the claim against Smith because there is no

9

evidence that Smith was an owner of the corporation. See generally *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-290 (1) (612 SE2d 296) (2005) (doctrine of piercing corporate veil permits corporate entity to be disregarded so as to impose liability on owner who has abused corporate form).

"It is axiomatic that a person who is not a party to a contract is not bound by its terms. . . . Because [Pernell Smith] was not a party to the [funding commitment letter], [Kittrell] cannot enforce it against him. The trial court did not err in granting [Smith] summary judgment on this claim." *Souza v. Berberian*, 342 Ga. App. 165, 170 (2) (802 SE2d 401) (2017) (citation and punctuation omitted).

(ii) *Fraud claim against Smith*.

The trial court also did not err in granting summary judgment to Smith on Kittrell's claim for fraud, because Kittrell has not pointed to evidence of the five elements of that tort. To prevail on this claim and avoid summary judgment to Smith, Kittrell must show "a false representation by [Smith], scienter, intention to induce [Kittrell] to act or refrain from acting, justifiable reliance by [Kittrell], and damage to [Kittrell]." *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990) (citation and punctuation omitted). Although Kittrell attributes numerous misrepresentations and bad intentions to Smith, the evidence in the record only shows Smith's promise

10

that Kittrell would be repaid within two weeks and Smith's assurances in a series of texts made in early 2012, *after* Kittrell gave Dream Builder the money, that the deal was about to close and that Kittrell would be repaid soon. There is no evidence in the record of Kittrell's broader allegation that the entire real estate deal "was a made-up scheme that did not exist."

Smith's promise of payment within two weeks does not support Kittrell's claim for fraud because it concerns a future event, not an existing fact or past event. See *Greenwald v. Odom*, 314 Ga. App. 46, 52-53 (1) (723 SE2d 305) (2012) ("[A] false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. Representations concerning expectations and hopes are not actionable.") (citation omitted). To the extent the promises in the text messages concern future events they are also not actionable, and to the extent they concern existing facts or past events Kittrell has not shown that he justifiably relied on them in giving Dream Builder the money because Smith had not yet made the representations.

*Judgment affirmed in part and vacated in part and case remanded with direction. McMillian, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

11